158 P.3d 1211 (2007)
Tony MEGA, a married man, Respondent,
v.
WHITWORTH COLLEGE, a Washington public benefit non-profit Corporation, Appellant.
No. 24942-5-IIII.
Court of Appeals of Washington, Division 3.
May 17, 2007.
*1213 Charles Matthew Andersen, Courtney Renee Beaudoin, Winston & Cashatt, Spokane, WA, for Appellant.
R. Bruce Johnston, Attorney at Law, Bainbridge Island, WA, for Respondent.
BROWN, J.
¶ 1 Dr. Tony Mega, a tenured Whitworth College professor, sued the college for breach of contract and wrongful discharge. The trial court set aside a defense verdict and granted Dr. Mega judgment as a matter of law on a wage issue, and a new trial on other contract issues. On appeal, Whitworth contends the trial court erred in (1) granting judgment as a matter of law for wages accrued during the contractual hearing process, (2) granting a new trial on whether termination procedures were followed, and (3) granting a new trial on Dr. Mega's claim for wrongfully withheld wages under RCW 49.52.070. Finding no error, we affirm.

FACTS
¶ 2 Whitworth hired Dr. Mega as a chemistry professor in 1993 and received behavior complaints. Ultimately, the evaluation committee recommended against tenure because it "lost confidence in [Dr. Mega's] collegiality." Ex. P-63. But by a July 29, 1999 letter, Whitworth President, William P. Robinson, agreed to recommend Dr. Mega for tenure if he treated his colleagues and others collegially, with courtesy and thoughtfulness. Dr. Mega agreed "that a breach of these professional responsibilities may be construed by the administration as an act of insubordination and could result in the action to terminate a tenured appointment." Ex. P-63.
¶ 3 In September 2000, the Board of Trustees granted tenure based on President Robinson's recommendation and Dr. Mega's interim collegiality. Afterwards, Whitworth began receiving complaints again about Dr. Mega's behavior. Even so, Whitworth and Dr. Mega entered into tenure contracts for 2000-01, 2001-02, and 2002-03. Central here is the 2002-03 contract. It partly states:
It is possible this contract may be rescinded or modified, dependent upon the outcome of the Faculty Affairs Committee inquiry being conducted at the time of writing this contract. Sections 1.14 and 1.15 of the Spring 2000 edition of the Faculty Handbook describe the inquiry process. . . . .
This offer of appointment is made subject to the laws, rules, and adopted policies of Whitworth College as contained in the Faculty Handbook.

Ex. P-87.
¶ 4 In Section 1.14 titled "Termination of Continuous Tenured Appointments," the handbook details termination procedures for a tenured professor. Clerk's Papers (CP) at 97. The dismissal procedures for cause are separated into preliminary procedures and formal procedures. The preliminary procedures envision settlement discussions. Additionally, either party may request an informal inquiry by the Faculty Affairs Committee (FAC1). If settlement and FAC1 negotiations fail, FAC1 may recommend either dismissal proceedings or a probationary year. The vice president for academic affairs and dean of faculty, along with the president, make the administrative decision.
¶ 5 If dismissal is pursued, the formal procedure requires written notification and a termination cause statement. The affected faculty person may request a formal hearing before a second Faculty Affairs Committee (FAC2) with provision for new members. If the dismissal is upheld by the FAC2, then a request for a final review by the Board's academic affairs committee may be requested that leads to a final decision.
*1214 ¶ 6 The Faculty Handbook, 1.14.3, provides for Suspensions:
Until the final decision regarding termination of an appointment has been reached, the faculty member will be suspended or assigned to other duties in lieu of suspension only if immediate harm would occur by the continuance of the regular position. Before suspending a faculty member, when the ultimate determination is pending through the institution's process, the administration will consult with the Faculty Affairs Committee. Salary will continue during the period of suspension. Suspension is appropriate only pending a hearing. A suspension which is intended to be final is, in fact, a dismissal and therefore will be dealt with as a dismissal.
CP at 100.
¶ 7 In March 2002, a FAC1 informally inquired into Dr. Mega's conduct. Without mention of the July 29, 1999 letter, the FAC1 decided "cause to break tenure" existed, and encouraged Dr. Mega to resign. Ex. D-501-2200. Dr. Mega refused.
¶ 8 On June 7, 2002, Whitworth wrote to Dr. Mega, explaining it had asked the FAC1 to "conduct an informal inquiry as to whether you had violated the terms of the July 1999 written agreement with President Robinson." Ex. 501-2202. Based upon the May 15, 2002 FAC1 resignation recommendation, and Citing section 1.14.2.2.3, Whitworth stated it was "proceeding with dismissal for cause[]" and rescinding the 2002-2003 contract. Id. Although mentioning "appeal" and the section 1.14.2.2.3.2 process, Whitworth asked Dr. Mega to turn in his keys and not return to the campus without clearance. Ex. 501-2203. Whitworth did not mention suspension or interim pay.
¶ 9 In August 2002, Dr. Mega requested a FAC2 hearing. On July 28, 2003, the FAC2 concluded "the College has established by clear and convincing evidence that there was adequate case to terminate Professor Mega's tenured appointment." Def's Trial Ex. D-550 at 10. President Robinson's July 29, 1999 letter was a motivating factor. In October 2003, the Trustee Academic Affairs Committee "sustained" Dr. Mega's dismissal. Def's Trial Ex. 553.
¶ 10 Dr. Mega sued, partly alleging wrongful discharge, breach of contract, and wrongful wage withholding. The jury found (1) Whitworth did not materially breach its contract with Dr. Mega by discharging him without having clear and convincing evidence of adequate cause, (2) Whitworth did not breach the parties' contract by discharging Dr. Mega without following the handbook's informal procedures, and (3) Whitworth did not breach the parties' contract by discharging Dr. Mega without following the handbook's formal procedures. Since the jury did not find a breach, the special verdict form instructed the jury not to reach the issue of past wages.
¶ 11 Dr. Mega filed a CR 50(b) motion for judgment as a matter of law on liability or, alternatively, a new trial under CR 59 on all jury issues. The court ruled Whitworth breached the parties' contract by discharging him without pay prior to the formal dismissal hearing and ordered back wages and prejudgment interest. The court granted a new trial on whether Whitworth violated RCW 49.52.070, whether Whitworth materially breached the parties' contract by not informing Dr. Mega of its concerns, and whether Whitworth breached the parties' contract by not following its informal and formal handbook procedures. Whitworth appealed.

ANALYSIS

A. Wages During Termination Process
¶ 12 The issue is whether the trial court erred in granting Dr. Mega's CR 50(b) motion for judgment as a matter of law and concluding he was due wages for the time between his termination and the formal hearing.
¶ 13 We review a trial court's decision on a motion for judgment as a matter of law using the same standard as the trial court. Sing v. John L. Scott, Inc., 134 Wash.2d 24, 29, 948 P.2d 816 (1997). A motion for judgment as a matter of law admits the truth of the opponent's evidence and all inferences that can reasonably be drawn from it. Queen City Farms, Inc. v. *1215 Cent. Nat'l Ins. Co., 126 Wash.2d 50, 98, 882 P.2d 703 (1994). "Granting a motion for judgment as a matter of law is appropriate when, viewing the evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party." Sing, 134 Wash.2d at 29, 948 P.2d 816. If any justifiable evidence exists on which reasonable minds might reach conclusions consistent with the verdict, the issue is for the jury. Queen City Farms, 126 Wash.2d at 98, 882 P.2d 703.
¶ 14 Whitworth contends Dr. Mega's CR 50(b) motion was untimely. When trial started, CR 50 stated, "A motion for judgment as a matter of law may be made at any time before submission of the case to the jury, or in accordance with section (b)." CR 50(a)(2). Section (b) allowed the motion within 10 days of verdict "whether or not the party has moved previously for judgment as a matter of law." CR 50(b).
¶ 15 On September 1, 2005, during trial, CR 50 amendments became effective requiring the motion before submitting the case to the jury. CR 50(a)(2). A movant may "renew" the request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment. CR 50(b). The language "whether or not the party has moved previously for judgment as a matter of law" was deleted from CR 50(b).
¶ 16 Civil rules apply to "all proceedings in actions after they take effect, and also all further proceedings in actions pending on their effective dates, except to the extent that in the opinion of the superior court, expressed by its order, the application of rules in a particular action pending when the rules take effect would not be feasible or would work injustice, in which event the procedure existing at the time the action was brought applies." CR 86. Consistently, the court found the amendments to CR 50 were "not feasible and would work an injustice." CP at 1141. This was not error, considering the court's reasoning that a legal question was wrongly submitted to the jury and an injustice to Dr. Mega resulted. Whitworth's prejudice argument is unpersuasive given the amount of litigation between the parties prior to the amendment.
¶ 17 Whitworth contends the wage issue is new. But the contractual faculty handbook states, "Until the final decision regarding termination of an appointment has been reached, the faculty member will be suspended. . . . Salary will continue during the period of suspension." CP at 100. The handbook goes on to say, "A suspension which is intended to be final is, in fact, a dismissal." Id. Here, Whitworth terminated Dr. Mega outright, believing insubordination under the July 29, 1999 letter was justification.
¶ 18 Under Berg v. Hudesman, 115 Wash.2d 657, 668, 801 P.2d 222 (1990), contract interpretation is a question of law when (1) the interpretation does not depend on the use of extrinsic evidence or (2) solely one reasonable inference can be drawn from the extrinsic evidence. Here, the trial court correctly assessed the presence of a legal question regarding contract interpretation not involving extrinsic evidence. Even if the extrinsic evidence was considered, solely one reasonable inference can be drawn; Dr. Mega was to be paid until the termination procedures were completed. Thus, no substantial evidence or reasonable inference could sustain a verdict for Whitworth. Sing, 134 Wash.2d at 29, 948 P.2d 816. Further, Whitworth incorrectly argues the court awarded wages sua sponte. Dr. Mega requested wages from his complaint forward.
¶ 19 Whitworth contends Dr. Mega was not entitled to salary after June 7, 2002. But Dr. Mega refused to resign after the informal FAC1 proceedings and was entitled to the suspension procedures detailed in the faculty handbook. Instead, Whitworth summarily dismissed him on June 7 incorrectly believing it had the right under President Robinson's July 29, 1999 letter.
¶ 20 Whitworth contends the trial court erred in awarding prejudgment interest. We review prejudgment interest awards for abuse of discretion. Pannell v. Food Servs. of Am., 61 Wash.App. 418, 449, 810 P.2d 952, 815 P.2d 812 (1991). RCW *1216 49.60.030(2) permits claimants to pursue remedies allowed in chapter 49.60 RCW or the United States Civil Rights Act of 1964. The Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(g), authorizes prejudgment interest on back pay in suits against private employers. Washington permits prejudgment interest for liquidated claims only. Pannell, 61 Wash.App. at 448-49, 810 P.2d 952. A "liquidated" claim is a claim "`where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion.'" Hansen v. Rothaus, 107 Wash.2d 468, 472, 730 P.2d 662 (1986) (quoting Prier v. Refrigeration Eng'g Co., 74 Wash.2d 25, 32, 442 P.2d 621 (1968)).
¶ 21 Dr. Mega renewed his tenure contract each year for a set salary. The parties' contract allows the court to exactly compute the amount owed to him for pay. Therefore, prejudgment interest on wages after June 7, 2002 interest is proper.

B. CR 59 New Trial Motion
¶ 22 The issue is whether the trial court erred in granting a new trial under CR 59 after reasoning it had improperly instructed the jury on the contract issues.
¶ 23 A court may grant a motion for a new trial when important rights of the moving party are materially affected because substantial justice has not been done. CR 59(a). When the basis for granting a motion for a new trial is based on questions of fact, we will not disturb the ruling absent a manifest abuse of discretion. State v. Balisok, 123 Wash.2d 114, 117, 866 P.2d 631 (1994). Discretion is abused when the decision is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971).
¶ 24 Greater deference is owed to a trial court's decision to grant a new trial than a decision to deny one. State v. Cummings, 31 Wash.App. 427, 430, 642 P.2d 415 (1982). "The grant of a motion for a new trial is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, the court can say, as a matter of law, that there is no substantial evidence or reasonable inferences to sustain the verdict for the nonmoving party." Kohfeld v. United Pac. Ins. Co., 85 Wash.App. 34, 41, 931 P.2d 911 (1997) (citing Hizey v. Carpenter, 119 Wash.2d 251, 271-72, 830 P.2d 646 (1992)).
¶ 25 The trial court granted a new trial on the issue of whether Whitworth materially breached the parties' contract: (1) by not providing adequate information after July 1999 and before termination to alert Dr. Mega of Whitworth's concerns; (2) by discharging Dr. Mega without following the informal procedures requiring Whitworth to seek a mutual settlement and provide prior notice of the charges before convening a formal dismissal for cause hearing; (3) by discharging Dr. Mega without following the handbook's formal procedures requiring written notice of the nature of the charges prior to the formal dismissal for cause hearing; (4) by impairing Dr. Mega's contractual rights to a fair hearing before unbiased faculty members when discharging him before the formal dismissal for cause hearing; and (5) by not providing Dr. Mega with the opportunity to obtain production of his tenure file and other documents for use at the formal dismissal for cause hearing.
¶ 26 Jury instruction 16 explained contract interpretation. The court decided it erred in allowing the jury to interpret and apply insubordination terms as a modification imported from President Robinson's July 29, 1999 letter. The court concluded solely the contract provisions contained in the Faculty Handbook controlled Dr. Mega's termination. It decided the July 29, 1999 letter was limited to Whitworth's initial decision to grant tenure and was fully performed. Although, the jury was instructed on contract interpretation, that is a question of law for the court's decision. Berg, 115 Wash.2d at 668, 801 P.2d 222. Thus, the trial court incorrectly assigned to the jury "the additional duty of resolving the questions of law inherent in the factual situation." State v. Chambers, 81 Wash.2d 929, 932, 506 P.2d 311 (1973).
¶ 27 Throughout trial, Dr. Mega objected to allowing the jury to consider evidence of any contract modification by President Robinson's July 29, 1999 letter. Consistently, *1217 Dr. Mega excepted to Instruction 17, regarding contract modification because:
We believe that the July 29, 1999 agreement between Dr. Mega and President Robinson was a contract with a condition precedent. And that those conditions were fulfilled. And the contract obligations were met by both parties, and therefore, there was no modification. And as a matter of law, the Court can find so. And it's not necessary to instruct the jury on modification. It will just confuse the jury.
RP at 2395-396. Therefore, Whitworth is incorrect in arguing the matter was not properly before the trial court when the reconsideration motion was argued.
¶ 28 Since greater deference is owed to a trial court's decision to grant a new trial than a decision to deny one; we conclude a tenable basis exists for the court's new trial order. Accordingly, the court did not abuse its discretion in granting Dr. Mega's request for a new trial on the contract breach issues specified above.

C. RCW 49.52.070
¶ 29 The issue is whether the trial court erred in granting a new trial to decide whether Whitworth violated RCW 49.52.070. Whitworth contends the statute is inapplicable.
¶ 30 RCW 49.52.070 applies to any employer who willfully and with intent withholds an employee's wages. In such instances, the employer "shall be liable in a civil action by the aggrieved employee or his assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages." Id. As analyzed, the trial court properly granted judgment as a matter of law regarding liability for Dr. Mega's pay before completion of the formal termination procedures. Since Whitworth, an employer, withheld wages from an employee, Dr. Mega, RCW 49.52.070 applies. Whitworth's arguments to the contrary are best left to the trial court.

D. Costs and Attorney Fees
¶ 31 On appeal, Whitworth requests costs under RAP 14.2, but it did not prevail. Dr. Mega requests attorney fees under RCW 49.48.030. Whitworth contends the applicability of RCW 49.48.030 was raised and rejected below, but the record shows the trial court addressed RCW 49.48.010 and RCW 49.52.050, not RCW 49.48.030.
¶ 32 RCW 49.48.030 provides that in any action in which a person successfully recovers wages or salary owed to him or her, the court shall assess reasonable attorney fees against the employer. Since the trial court did not err in granting Dr. Mega's wages as a matter of law, he is granted attorney fees under RCW 49.48.030.
¶ 33 Affirmed.
WE CONCUR: SWEENEY, C.J., and KATO, J. Pro Tem.