

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
MAR 31 2016
DATE_____
Madsen, C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Mar 31, 2016

for Ronald R. Carpenter
Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| RICHARD J. MILLIES, as trustee of the Richard J Millies Trust, and SUSAN P. MILLIES, as trustee of the Susan P Millies Trust, | ) ) ) ) ) | No. 91301-3 |
| Petitioners, | ) ) ) | |
| v. | ) ) | En Banc |
| LANDAMERICA TRANSNATION dba TRANSNATION TITLE INSURANCE COMPANY, a corporation conducting business in Washington, and FALCON, INC., an Idaho corporation conducting business in Washington, | ) ) ) ) ) ) ) | |
| Respondents. | ) ) ) ) | Filed _____ |

GONZÁLEZ, J.—Richard and Susan Millies (collectively Millies)
purchased a secluded piece of property in Stevens County overlooking Deer
Lake. Unfortunately, their title company overlooked an easement that could
render the property far less secluded. The title insurer, LandAmerica
Transnation Title Insurance Company, conceded that the easement had been

overlooked in the title search and conceded coverage for the omission. After the two sides could not agree on the proper amount of compensation, the Millies sued on a variety of grounds. The jury returned a defense verdict. We must decide whether to disturb that jury verdict. We find the claimed jury instructional errors were not properly preserved, that the instructions given are the law of the case before us, and that the plaintiffs are not entitled to either judgment as a matter of law or a new trial. We affirm.

BACKGROUND

In 2006, after looking at several properties, the Millies bought 75 acres of rural land intending to build a new home for their retirement. The Millies hired Columbia Title Company to research the title and obtained an owner's title policy from LandAmerica. The title policy covered loss or damage up to $250,000, the purchase price.

After the Millies bought the land, they learned that the property was burdened by a substantial recorded easement that authorized public use of a road bisecting their property. They also learned that a neighbor planned to develop 50 condominium units on his property and to use the easement for public access. The Millies contacted Columbia Title, who confirmed the easement and gave the Millies information about filing a claim with Transnation.

The Millies submitted a claim seeking $125,000. A Transnation claims representative contacted the Millies' attorney and conceded that the Millies' claim was covered, but disagreed that the easement deprived the property of half its value. Transnation contended that under the policy, the appropriate measure of damages was the reduction in the property's value due to the easement to be determined by a fair market appraisal.

Transnation hired an appraiser to conduct a diminution-in-value (DIV) appraisal of the Millies' property. The appraiser determined the DIV was $25,000. In November 2007, Transnation offered to pay that amount to the Millies in full settlement of their claim. The Millies rejected that offer, submitted a proof of loss, and requested $100,000 to settle. After more investigation, Transnation stood by the initial determination of the loss. Transnation sent the Millies a check for $25,000 on July 31, 2009. The Millies rejected the offer and returned the check.

In August 2009, the Millies filed suit against Transnation for breach of contract, breach of duties under the Consumer Protection Act and the Insurance Fair Conduct Act, breach of duty of good faith, negligence, and breach of warranty deed covenants. In its answer, Transnation denied liability and asserted an affirmative defense that it fulfilled the terms of its contract by investigating the Millies' claim and timely tendering payment

based on a reasonable fair market appraisal. Transnation also hired a second appraiser to reevaluate the Millies' claim. This appraiser valued the DIV at $37,500.

At trial, the Millies called two appraisers who testified the easement diminished the property's value by 50 percent, or $125,000. Transnation called their appraisers, one of whom testified that the property's value was diminished by $25,000, the other by $37,500. Transnation also called its claims representatives who conceded on the stand that the company is liable for the DIV loss under the Millies' policy and testified that $25,000 was its reasonable, good faith attempt to settle the claim.

Near the end of trial, the parties submitted proposed jury instructions. Both parties offered their own breach of contract instruction containing similar language as to the elements of the claim. However, Transnation's proposed breach of contract instruction included the affirmative defense asserted in its answer.

The next day, both parties offered formal exceptions to the jury instructions. The Millies made no specific objection to Transnation's proposed breach of contract instruction, but did make a general objection to the court not giving all of their proposed instructions. This broad objection did not specify any particular jury instruction or identify any particular error.

The Millies simply suggested the language in their proposed instructions would be more helpful to the jury. The court adopted Transnation's breach of contract instruction.

During jury deliberations, the jury asked whether it could make a "recommendation about the settlement amount separate from the verdict form?" Clerk's Papers (CP) at 497. The court referred the jury to its previous instructions. Shortly afterwards, the jury returned a defense verdict. The jury specifically found that Transnation did not breach its contract with the Millies. Given that Transnation conceded the title company had failed to find the recorded easement, the jury must have concluded Transnation had satisfied its contractual obligations by investigating and tendering reasonable payment.

The Millies moved for a new trial. In support of their motion, the Millies presented declarations from three jurors, each stating they believed Transnation violated at least one provision of law in attempting to settle the claim. The declarants stated all the jurors agreed the Millies were entitled to some award of damages, that the jurors were confused by the verdict form and the instructions, and that they believed the judge would "pencil in" a fair settlement amount. *Id.* at 531.

The Millies also moved, for the first time, for judgment as a matter of law. The trial court denied the motion. Although the trial court denied the motion, it was not clear whether the DIV claim under the insurance policy remained. The court asked the parties to brief this issue and held a hearing. The court concluded:

> [T]he jury followed the instructions that were given to it by the court. And that's what they did. And they found that LandAmerica had fulfilled its contract, and that's as far as they went. They weren't saying that there shouldn't be a recovery on the outstanding amount, but that wasn't given to them. They did not have that decision to be made.

3 Verbatim Tr. of Proceedings (VTP) (Apr. 30, 2013) at 366. The court subsequently entered a final order ruling that no issues remained for the court or the trier of fact to consider in the case. The Millies appealed, arguing that the trial court erred in giving Transnation's breach of contract instruction and in denying the posttrial motion for a new trial. The Court of Appeals affirmed. *Millies v. LandAmerica Transnation*, noted at 185 Wn. App. 1024, 2015 WL 213681, at *17. The court decided that the Millies had not properly presented whether they were entitled to recover the $25,000 originally offered by Transnation to settle the claim and did not reach the merits. *Id.* We granted review. 183 Wn.2d 1002, 349 P.3d 856 (2015).

ANALYSIS

1.    OBJECTION TO BREACH OF CONTRACT INSTRUCTION

The Millies challenge the breach of contract instruction, instruction 7, on the theory it improperly included a defense alongside the elements of the claim.  Jury instruction 7 was based on a pattern jury instruction. It said:

Plaintiffs have the burden of proving each of the following propositions on their claim of breach of contract:

(1) That Plaintiffs entered into a contract with Defendant, containing the following terms:
This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.
The difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(2) That Defendant breached the contract as claimed by Plaintiffs;

(3) That Plaintiffs were damaged as a result of Defendant's breach.

If you find from your consideration of all the evidence that any of these propositions has not been proved, your verdict should be for the Defendant.  On the other hand, if each of these propositions has been proved, then you must also consider the affirmative defense claimed by the Defendant.

7

> Defendant has the burden of proving the following affirmative defense:
>
> > (1)     That Defendant fulfilled the terms of the contract with Plaintiffs by investigating the claim and tendering payment in a timely manner based on a reasonable fair market appraisal.
>
> > If you find from your consideration of all the evidence that this affirmative defense has been proved, your verdict should be for Defendant on this claim.  On the other hand, if this affirmative defense has not been proved, then your verdict should be for Plaintiffs on this claim.

CP at 476; *see also* 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 300.03, at 186 (2012).

The Millies contend that the instruction was misleading and the included affirmative defense was a defense only to the tort claims, not to the breach of contract claim.  We must first decide whether any error was preserved.

A party who objects to a jury instruction must "state distinctly the matter to which counsel objects and the grounds of counsel's objection, specifying the number, paragraph or particular part of the instruction to be given or refused."  CR 51(f).  This gives the trial court the opportunity to remedy instructional error and reduces unnecessary appeals and retrials. *Estate of Ryder v. Kelly-Springfield Tire Co.*, 91 Wn.2d 111, 114, 587 P.2d 160 (1978) (quoting *Roumel v. Fude*, 62 Wn.2d 397, 399-400, 383 P.2d 283

(1963)). The objection must be "sufficient to apprise the trial judge of the nature and substance of the objection." *Crossen v. Skagit County*, 100 Wn.2d 355, 358, 669 P.2d 1244 (1983) (citing *Stewart v. State*, 92 Wn.2d 285, 298, 597 P.2d 101 (1979)). Failure to make an adequate objection may preclude appellate review of that instruction. *Bitzan v. Parisi*, 88 Wn.2d 116, 125, 558 P.2d 775 (1977); *Berry v. Howe*, 34 Wn.2d 403, 409, 208 P.2d 1174 (1949).

Hypertechnicality is not required. As long as the trial court understands why a party objects to a jury instruction, the objection is preserved for review. *Washburn v. City of Federal Way*, 178 Wn.2d 732, 747, 310 P.3d 1275 (2013). We have found "extended discussions" on the record about a particular jury instruction sufficient to preserve the objection. *Crossen*, 100 Wn.2d at 359; *Washburn*, 178 Wn.2d at 747-48. Similarly, an objection to a trial court's failure to give a competing instruction may preserve an objection to the instruction actually given, so long as the challenger clearly informed the court of the basis of the objection. *Falk v. Keene Corp.*, 113 Wn.2d 645, 658, 782 P.2d 974 (1989). *Falk* involved a products liability claim against a manufacturer. *Id.* at 646. The Falks did not object to the negligence instruction given, but did object to the court's refusal to instruct on strict liability. *Id.* at 646-47. We held that was

sufficient to apprise the trial court of "the point of law in dispute, *i.e.,* whether an instruction in the 'negligence' language of the statute misstated the law" as it applied to all of the claims. *Id.* at 658.

Here, the Millies made no such specific objection to instruction 7 or to the failure to give a related instruction. Unlike *Crossen*, there were no extended discussions about instruction 7, no discussion of the breach of contract claim generally, and no discussion of the affirmative defense. Nothing offered to the trial court would have alerted it to the specific reasons for the objection.

Relying on our recent *Washburn* opinion, the Millies argue that an objection to all instructions not given is enough to preserve the issue for appeal. Appellants' Pet. for Review at 8-9 (citing *Washburn*, 178 Wn.2d at 747). In *Washburn*, the court considered whether a municipality could be held liable for negligent service of a protective order. 178 Wn.2d at 738. Among other things, the city argued that it had no duty to the victim under the public duty doctrine. *Id.* at 740-41. The city objected to the giving of an instruction stating the city owed a duty to the victim. *Id.* at 743. We found the city's "'strenuous objections'" were enough to preserve the issue. *Id.* at 743, 748. Here, the Millies' general objection was not a "strenuous objection" to the giving of the breach of contract instruction. As the court

refused to give at least 11 of the 24 jury instructions proposed by the Millies, a general objection would not have alerted the court to the point of law in dispute.[1]

The Millies also argue that they apprised the trial court of their objection in their trial brief. Appellants' Pet. for Review at 8-9. Their trial brief stated in pertinent part:

> Every contract carries with it an implied duty to act in good faith which obligates parties to cooperate with each other so that each may obtain the full benefit of performance. This duty requires an insurer to conduct a reasonable investigation. It must base any decision on adequate information and not overemphasize its own interest. If it doesn't, it will have breached the covenant and, therefore, the policy.

CP at 355 (citations omitted). In a footnote, the Milles stated that a "breach of contract action against an insurer is a separate cause of action and the jury in this case should be instructed separately on this claim. *Coventry* [*v. Am. States Ins. Co.*, 136 Wn.2d 269, 278, 961 P.2d 933 (1988)] *(plaintiff may simultaneously bring both)*." *Id.* n.2. Their argument, generously construed, was that under *Coventry*, a breach of contract suit is a separate cause of

---

[1] The Millies point to their general objection to all instructions "that were not given" and argue that they were objecting to the court's refusal to give a proffered jury instruction that included language from *Columbia Park Golf Course, Inc. v. City of Kennewick*, 160 Wn. App. 66, 248 P.3d 1067 (2011). 3 VTP (Jan. 31, 2013) at 345-46. *Columbia Park* concerned whether expectation or actual damages are recoverable in a breach of contract action. 160 Wn. App. at 82-87. However, this would not alert the trial judge about any problem with including an affirmative defense along with the elements of the action. It is also unclear from a review of the Millies' proposed instructions which specific language from *Columbia Park* that they sought to include. *See* CP at 432-67. Without more, this general objection was not enough to preserve the Millies' challenge to instruction 7.

action from an action alleging an insurer acted in bad faith; thus, there should be two separate jury instructions separating those two issues if both claims are brought in a single suit. *See Coventry*, 136 Wn.2d at 268. But this was insufficient to alert the trial judge to the Millies' current specific complaint about the affirmative defense in instruction 7. As requested, the jury was instructed separately on the breach of contract issue. CP at 476. The trial court gave multiple instructions on the duty to act in good faith, as the Millies requested. *Id.* at 475, 477, 481. The special verdict form additionally separated the breach of contract claim from the good faith claim, requiring the jury to address each claim individually. *Id.* at 498. The Millies' appeal is not about whether the jury was confused about the duty of good faith. Their appeal argues the jury was confused because the trial court included the affirmative defense with the breach of contract instruction. There is nothing in the Millies' trial brief or this court's opinion in *Coventry* to preserve an objection on those grounds.

We hold that the Millies failed to preserve their challenge to instruction 7.

## 2. LAW OF THE CASE DOCTRINE

Unless there is a proper objection, jury instructions become the law of the case.[2] *State v. Leohner*, 69 Wn.2d 131, 134, 417 P.2d 368 (1966) (citing *Crippen v. Pulliam*, 61 Wn.2d 725, 380 P.2d 475 (1963)). We review the sufficiency of the evidence in light of the instructions given. *Tonkovich v. Dep't of Labor & Indus.*, 31 Wn.2d 220, 225, 195 P.2d 638 (1948). "This rule does not apply if the record or evidence conclusively shows that the party in whose favor the verdict is rendered is not entitled to recover." *Id.*[3] The Millies argue that the law of the case doctrine should not apply because the record does not support a verdict awarding no damages to the Millies. Appellants' Pet. for Review at 11-12. They also argue that the doctrine is discretionary and should not be applied "where it would result in manifest injustice." *Id.* at 12 (citing *Greene v. Rothschild*, 68 Wn.2d 1, 8, 414 P.2d 1013 (1966)). But the Millies have not demonstrated a manifest injustice or

---

[2] We note in passing that the law of the case doctrine does not prevent a party from challenging manifest errors in the jury instructions affecting a constitutional right for the first time on appeal. RAP 2.5(a)(3).

[3] We recognize the continuing vitality of *Tonkovich* on this point has recently been questioned. *See Washburn v. City of Federal Way*, 169 Wn. App. 588, 605-06, 283 P.3d 567 (2012) (noting that the quotation above "is not supported by any citation to authority [and] does not discuss any of the many cases that do apply the law of the case doctrine to cases that are undistinguishable from this one."), *aff'd on other grounds*, 178 Wn.2d 732. This case does not give us an opportunity to decide how to harmonize *Tonkovich* with more robust applications of the law of the case doctrine such as that articulated in *State v. Hickman*, 135 Wn.2d 97, 101, 105, 954 P.2d 900 (1998) (holding the State was bound to prove even erroneously included elements).

that no evidence supported the jury's verdict. The breach of contract instruction directed the jury to render a verdict for Transnation if the company proved it fulfilled the terms of the contract with the Millies "by investigating the claim and tendering payment in a timely manner based on a reasonable fair market appraisal." CP at 476. The jury returned a verdict for Transnation and awarded no damages to the Millies because the jury determined Transnation proved the affirmative defense. We find sufficient evidence supported the jury's verdict. The jury heard evidence from the Transnation claim representative who investigated the claim and timely tendered payment of $25,000, which she believed to be a reasonable fair market amount. 2 VTP (Jan. 30, 2013) at 197-98, 200-01. Although the parties disputed whether the $25,000 amount was "reasonable," the jury resolved this dispute and found that it was.

We decline to disregard instruction 7 and hold that it is the law of the case.

### 3. JUDGMENT AS A MATTER OF LAW

The Millies argue that the trial court erred in denying their postjudgment motion for judgment as a matter of law. We find the motion was untimely. CR 50 dictates when motions for judgment as a matter of law must be made: "at any time before submission of the case to the jury." CR

50(a)(2).[4] Such a motion may be renewed after trial, but the rule's use of the word "renew" in CR 50(b) indicates that a party must file a motion for a judgment as a matter of law *before* submitting the case to the jury if the party wishes to *renew* its previous motion after the jury returns a verdict.

This language in CR 50 came from the 2005 amendments to the Civil Rules. Prior to 2005, a party could move for judgment as a matter of law after the case had been submitted to the jury regardless of whether the party had previously sought relief. Former CR 50(b) (2004); *Mega v. Whitworth Coll.*, 138 Wn. App. 661, 668-69, 158 P.3d 1211 (2007). The drafters of the 2005 amendments intended for the new language to *require* the motion for judgment as a matter of law to be made before submittal to the jury if counsel wishes to renew the motion after the verdict. 4 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CR 50 drafters' cmt. at 225 (6th ed. 2013) ("This suggested amendment changes Washington practice and requires that a motion for judgment as a matter of law be made before

---

[4] CR 50 reads, in relevant part:
> (2) *When Made.* A motion for judgment as a matter of law may be made at any time before submission of the case to the jury.
> **(b) Renewing Motion for Judgment After Trial; Alternative Motion for a New Trial.** If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, ... [t]he movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment... .

submission of the case to the jury as a condition to renewing the motion post-verdict.").

Our Court of Appeals has interpreted this language in line with the drafters' intent. If a party does not make the motion before submitting the case to the jury, the party waives its right to file the motion later. *Gorman v. Pierce County*, 176 Wn. App. 63, 86, 307 P.3d 795 (2013); *Hanks v. Grace*, 167 Wn. App. 542, 552-53, 273 P.3d 1029 (2012). We join these courts and hold that a party is required to move for judgment as a matter of law before the case is submitted to the jury to preserve any opportunity to renew the motion after the verdict.

Here, the Millies failed to move for judgment as a matter of law prior to the submission of the case to the jury. Thus, the Millies' postverdict motion for judgment as a matter of law after the verdict was untimely and properly denied.

### 4. MOTION FOR A NEW TRIAL

The Millies assert that they are entitled to a new trial under CR 59 because (1) of irregularities, (2) of misconduct by the jury and by Transnation's counsel, (3) of accident or surprise, (4) of inadequate damages, (5) of error in the assessment of damages, (6) the verdict was contrary to the evidence at trial, and (7) substantial justice was not done.

16

Counsel provided briefing on only two issues: that the verdict was contrary to the evidence at trial and that substantial justice has not been done. *See* Appellants' Pet. for Review at 11 n.6. [5]

A. Evidence Presented At Trial

Where the proponent of a new trial argues the verdict was not based on the evidence, appellate courts review the record to determine whether there was sufficient evidence to support the verdict. *McUne v. Fuqua*, 45 Wn.2d 650, 652, 277 P.2d 324 (1954). There must be "no evidence or reasonable inference from the evidence to justify the verdict or the decision" or it must be "contrary to law" to grant a new trial. CR 59(a)(7). It is an abuse of discretion to deny a motion for a new trial where the verdict is contrary to the evidence. *Palmer v. Jensen*, 132 Wn.2d 193, 198, 937 P.2d 597 (1997) (citing *McUne*, 45 Wn.2d at 653; *Krivanek v. Fibreboard Corp.*, 72 Wn. App. 632, 637, 865 P.2d 527 (1993)). However, where reasonable minds could differ on the question, the court will not disturb the jury's verdict. *Winbun v. Moore*, 143 Wn.2d 206, 217, 18 P.3d 576 (2001).

---

[5] The Millies' petition for review states that the Millies reserve argument on alternate grounds for a new trial under CR 59(a)(1), (2), (3), (5), and (6). However, the Millies devoted insufficient argument to support these other new trial arguments. We decline to consider them. *See Saunders v. Lloyd's of London*, 113 Wn.2d 330, 345, 779 P.2d 249 (1989) (declining to reach arguments not supported by adequate argument and authority).

Here, as the Court of Appeals noted, this case presents a "thorny question" of whether the evidence in this case is contrary to the verdict. *Millies*, 2015 WL 213681, at *16. This is because Transnation concedes that the Millies are entitled to payment for the reduction in value from the undiscovered easement pursuant to the policy. *See* 2 VTP (Jan. 30, 2013) at 97-98; 200-01. In this regard, a jury verdict awarding the Millies no damages is arguably contrary to the evidence presented at trial.[6]

But as discussed above, the jury instructions given are the law of the case, and at no point was the jury simply asked to value the amount of the conceded covered loss. Here, the jury was presented with a special verdict form with a number of questions to answer. CP at 498-99. The Millies did not object to the use of this special verdict form. The first question asks, "Did Defendant breach the contract with the Plaintiff?" CP at 498. The jury answered this question in the negative. Given Transnation's concession, the only way the jury could have found no breach of contract was based on the defendant's affirmative defense. *See* 2 VTP (Jan. 30, 2013) at 185-207.

The next question on the verdict form asked, "Did Defendant fail to act in good faith?" CP at 498. The jury also answered this question in the

---

[6] The record before us does not suggest Transnation, since trial, has declined to pay the damages it concedes the Millies suffered. Whether a refusal to do so now would breach the contract is not before us.

18

negative and thus did not award any damages on this claim. While these facts were vigorously disputed, sufficient evidence supports the jury's verdict. Transnation presented evidence from both of its claim representatives who worked on the Millies' claims that they did act in good faith. Evidence was presented that Transnation promptly began investigating the claim after submission, hired an expert to evaluate the claim, made an offer to settle the claim, and submitted payment to the Millies after attempting settlement negotiations. 2 VTP (Jan. 30, 2013) at 185-207; 3 VTP (Jan. 31, 2013) at 284-93. Transnation also offered evidence from an insurance attorney who testified that Transnation acted in good faith as compared to other insurance companies in the business. Suppl. VTP (Jan. 30, 2013) at 109-12. There was sufficient evidence presented for the jury to conclude that Transnation acted in good faith.

Finally, the jury was asked, "Did Defendant act negligently?" and "Did Defendant violate the Consumer Protection Act?" CP at 498-99. The jury answered both questions in the negative and did not award any damages on these claims. Transnation presented opinion testimony from an insurance attorney that Transnation's actions were not unreasonable, were not unfair or deceptive acts, and were not violations of the Consumer Protection Act (CPA) or the Insurance Fair Conduct Act (IFCA). 2 VTP (Jan. 30, 2013) at

109-12. There was sufficient evidence presented for the jury to believe Transnation's expert and find in favor of Transnation on these last two claims.

Looking at the special verdict form as a whole, the jury was asked to determine damages only if it found in the Millies' favor on a claim. CP 498-99. The jury was not asked to determine the diminution in value of the property absent a finding of liability. Unfortunately, the Millies did not suggest below or argue here on appeal that the special verdict form should have included the option to determine the diminution in value amount to be paid.[7] The Millies forfeited their opportunity to have a jury decide what the diminution in value amount should be, which was the crux of the evidence presented during trial.[8]

We find there was sufficient evidence to support the jury verdict in favor of Transnation on all the Millies' claims.

---

[7] During closing arguments, plaintiffs' counsel argued for the jury to award damages in the amount of $125,000 because Transnation acted unreasonably and in bad faith. 3 VTP (Jan. 31, 2013) at 318. Counsel did not ask the jury to determine the DIV amount. We note in passing that it was defense counsel who pointed to question 2 on the verdict form and indicated that would be where the DIV amount should go. *Id.* at 335 ("Once you get through your analysis and you find—everything [Transnation] did was reasonable, but we still have a number, we agree on the number, that's where you put it. And that's whether you agree with...$25,000 [or] $37,500."). Perhaps feeling bound by the jury instructions given, the jury did not accept counsel's invitation.

[8] The Millies did not rebut evidence presented by Transnation indicating that the easement did not extend beyond the Millies' property and therefore could not be used as a public road. *See* Suppl. VTP (Jan. 30, 2013) at 71-72, 100-02. Based on this evidence, an inference can be made that the easement had no detrimental effect on the property and the amount of damages could be $0.

## B. Substantial Justice

The Millies also argue that they are entitled to a new trial under CR 59(a)(9) because substantial justice has not been done. Courts rarely grant a new trial under this catchall provision given the other broad grounds under CR 59. *Knecht v. Marzano*, 65 Wn.2d 290, 297, 396 P.2d 782 (1964). The weight of evidence and questions of credibility are the province of the finder of fact. *Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 34, 891 P.2d 29 (1995). A motion for a new trial on this ground cannot be used to avoid the duty of a party to timely except to instructions and object to trial practices. *Cerjance v. Kehres*, 26 Wn. App. 436, 441, 613 P.2d 192 (1980). Counsel for the Millies did not object or take exception to the special verdict form that did not ask the jury to make a determination on the diminution in value claim. If an issue of material fact is omitted from the special verdict form and counsel fails to bring this omission to the court's attention, the affected party waives the right to have that issue submitted to the jury. *See* CR 49(a). The Millies do not provide additional argument on this issue as to why substantial justice was not done and rely mostly on the argument that the verdict is contrary to the evidence. The Millies have not proved that substantial justice was not done in this case.

Accordingly, we hold that substantial justice does not require the granting of a new trial in this case.

The dissent argues that we should remand this case "[i]n the interest of doing substantial justice . . . to allow the trial court to exercise its authority under CR 49(a) and consider whether to determine the DIV as an issue omitted from the jury's consideration."[9] Dissent at 3. However, as the dissent notes, CR 49(a) contemplates resolving issues that were inadvertently omitted from the jury. Dissent at 1 (citing CR 49(a)). Here, it was likely the Millies' trial strategy to omit the DIV question from the jury's consideration.[10] Moreover, at oral argument, counsel for the Millies rejected

---

[9] The trial court already made a determination at the posttrial hearing on the DIV issue. *See* 3 VTP (Apr. 30, 2013) at 364-65. The trial court stated:

> But the business that was given to the jury was completed, in a coherent, sensible fashion, and—and that's that. And this court, I didn't act in that short period of time, that window that was available—There was no request to do so, and I didn't. And so that opportunity has come and gone.
> And this is all spelled out in Civil Rule 49(a) and the available case law that goes with that.

*Id.* The Millies did not appeal the court's determination on the DIV issue under CR 49(a). We decline to reach it.

[10] The trial court believed it was the Millies' trial strategy to omit the DIV issue from the jury instructions:

> I do believe that it was part of the plaintiffs' theory of the case to do it exactly the way it was done and the way it was presented to the jury. And that was to have the—and you remember the low-ball argument that Mr. Boswell made passionately to the jury, well, that included the fact that there'd never really been a payment made. And he was in effect wanting that to bleed over into the jury's thinking about the remainder of the claims. And that was a tactical decision that

resolving this case under CR 49(a). *See* Wash. Supreme Court oral argument, *Millies v. Landamerica Transnation*, No. 91301-3 (Oct. 27, 2015), at 41 min., 30 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org. The Millies have requested a new trial, most likely because they want another attempt to prove damages under the CPA and the IFCA. Remanding this case for the trial court to decide the DIV amount is not the substantial justice that the Millies seek.

CONCLUSION

We hold that the Millies did not preserve their objection to the jury instructions, and that those instructions became the law of the case. The Millies are not entitled to either judgment as a matter of law or a new trial. There was sufficient evidence to support a verdict in favor of Transnation in light of the instructions given. We affirm.

---

he made, I believe is what occurred here. But in the end the jury did not do that; it limited its deliberations strictly to the jury instructions that it had been given. And, finally, denied or refused to accept plaintiffs' theory of the case.

*Id.* at 365-66.

_Gonzalez, J._

WE CONCUR:

_Madsen, C.J._

_Owens, J._

_Fairhurst, J._

_Gordon McCloud, J._

_Yu, J._

No. 91301-3

STEPHENS, J. (dissenting)—The majority frames the question before us as whether this court should disturb the jury's verdict. Majority at 2. On that question, I agree with the majority's conclusion that the verdict should stand. The verdict form did not ask the jury to determine the diminution in value (DIV) of Richard and Susan Millies' (collectively Millies) property if it found no breach of contract.[1] I respectfully dissent, however, because it is not clear the trial court believed it had any options following the jury's verdict, though it retained the authority to resolve

---

[1] Although the majority correctly recognizes the jury's verdict did not address the DIV issue, it nonetheless suggests that the jury may have decided the DIV was $0. Majority at 20 n.8 ("[A]n inference can be made that the easement had no detrimental effect on the property and the amount of damages could be $0.") This is pure speculation, as the jury was not asked about DIV and therefore did not calculate it.

the omitted DIV issue itself under CR 49(a). In the interest of doing justice, I would remand to afford the trial court the opportunity to exercise this option.

Under CR 49(a), a trial court may resolve an issue that was inadvertently omitted from the jury's consideration. CR 49(a) ("As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.").

After the jury returned its verdict, the parties realized that the DIV issue remained unresolved. The trial court looked for a solution. While considering the Milles' motion for directed verdict or new trial, the court specifically asked the parties to brief how to resolve the DIV issue following the jury's verdict. Clerks Paper's (CP) at 532-33 ("Counsel to brief whether value of diminution in value claim/determination remains."). In doing so, the trial court reserved ruling on whether the result at trial was problematic because there had been no determination on the DIV claim.

The majority suggests that the trial court considered, but rejected, a resolution under CR 49(a). I disagree. The context in which the discussion of CR 49(a) arose shows that defense counsel argued the court lacked the authority to decide an omitted issue once the jury verdict was accepted. 3 Verbatim Tr. of Proceedings (VTP) (Apr. 30, 2013) at 352-53 ("[CR 49(a)] says the judge, the bench can then consider it, and may consider it, but only in the limited window of time. It's a pretty limited window. It really is from the moment the jury delivers the verdict, up until the moment the

verdict is filed.") The trial court agreed, concluding that once the verdict was accepted, "that opportunity has come and gone." *Id.* at 364. But, it is not fatal to a remedy under CR 49(a) that the *jury* had completed its work if there remained an issue that was inadvertently omitted from its consideration. Contrary to the majority's reading of the record, the trial court did not conclude that the Millies made a tactical decision to omit the DIV issue from any consideration. Immediately after the passage from the record quoted in the majority opinion, majority at 22 n.10, the court explained why it thought the DIV question remained unanswered by the jury's verdict. The court said, "[The jurors] weren't saying that there shouldn't be a recovery on the outstanding amount, but that wasn't given to them. They did not have that decision to be made." 3 VTP (Apr. 30, 2013) at 366.

Given the trial court's apparent misunderstanding of its options under CR 49(a), the record does not support the majority's conclusion that the court exercised its authority and declined to award the Millies any DIV damages. *See* majority at 22 n.9 ("The trial court already made a determination at the posttrial hearing on the DIV issue."). A close examination of the transcript from those proceedings reveals that the trial court believed that it lacked authority to decide the issue after the verdict—not that it had already decided the DIV issue. 3 VTP (Apr. 30, 2013) at 364 ("And I think actually you both agreed on this—that at this juncture there's nothing the court can do."). Therefore, in the interest of doing substantial justice, I would remand to allow the trial court to exercise its authority under CR 49(a) and

consider whether to determine the DIV as an issue omitted from the jury's consideration.[2]

---

[2] I find misleading the majority's unnecessary comment that Transnation has not "declined to pay the [DIV] damages it concedes the Millies suffered." Majority at 18 n.6. At oral argument, Transnation's counsel suggested the verdict now leaves the Millies unable to recover.

> JUSTICE GONZÁLEZ: Do you still concede that you owe the diminution in value to the insured here or do you think that that obligation has somehow expired?
>
> TRANSNATION ATTORNEY: I believe that from the onset of this case this was an accepted title insurance claim. . . .
>
> JUSTICE GONZÁLEZ: But you still owe that amount?
>
> TRANSNATION ATTORNEY: I think the question that I'm trying to answer is two parts. One, yes it was an accepted title insurance claim, but whatever happened at trial, I believe, unfortunately, now has thrown up roadblocks for the petitioner's to recover any of that money potentially under the policy even though the policy was admitted as an accepted claim from its onset.

Wash. Supreme Court oral argument, *Millies v. Landamerica Transnation*, No. 91301-3 (Oct. 27, 2015), at 16 min., 24 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

_____

Stephens, J.

Johnson, J.

Wiggins, J.