# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| HAROLD LEE, an individual, | No. 53290-5-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DWP GENERAL CONTRACTING, INC., a Washington Corporation, | |
| Appellant. | |

MAXA, J. – DWP General Contracting, Inc. (DWP) appeals the trial court's order denying its motion for a new trial under CR 59(a) or remittitur under RCW 4.76.030 in a breach of contract action. DWP entered a contract with Harold Lee to build apartments and townhomes on Lee's property, but DWP failed to complete the project until 14 months after the agreed upon completion date. Lee filed suit against DWP. A jury rendered a verdict for Lee, including a $323,195 award for lost profits. The trial court denied DWP's motion for a new trial or remittitur based on the size of the lost profit award.

DWP argues that the trial court erred in denying its motion for a new trial or remittitur because the lost profits the jury awarded did not include a deduction for Lee's mortgage payments and all property taxes and insurance. We hold that the lost profits award was not improper or excessive because expert testimony supported the amount of the lost profits award.

Accordingly, we affirm the trial court's order denying DWP's motion for a new trial or remittitur.

FACTS

In July 2015, Lee contracted with DWP to construct apartments and townhomes on property he owned in Vancouver, Washington. Lee intended to generate income from the rental of the apartments and townhouses. He financed the project through a construction loan, which he planned to convert to a permanent loan when the buildings were completed.

In the contract, DWP promised to complete the project within 180 days of starting construction (by March 2016). DWP did not complete the project until June 2017, 14 months after the agreed upon completion date. Lee sued DWP for breach of contract, seeking damages for the profits he lost because of the delay in the completion of the project as well as other damages.

At trial, Lee called as an expert witness Laura Markee, a chartered financial analyst and business appraiser, to testify regarding the amount of his lost profits. Markee also prepared a written opinion admitted as an exhibit at trial that outlined the damages caused by the construction delay, including Lee's lost profits.

Markee's report detailed her calculation of Lee's lost profits. To do so, Markee calculated the average monthly rental income for a test period (September 2017 to May 2018). She then adjusted the average monthly rental income downward to reflect the fact that rental rates had increased by 4.4 percent between 2016 and 2017. She then subtracted the average monthly variable operating expenses for the same time period. The resulting amount was the average monthly lost profits. She multiplied the average monthly lost profits by 14 months, the duration of the delay, to derive her unadjusted lost profit total.

Markee made two further adjustments to the lost profit total. First, she reduced the lost profits to reflect the fact that the delay period was shorter for the two townhomes than it was for the rest of the project. Second, she reduced the lost profits to reflect the fact that the property taxes increased once the project was completed. This resulted in her final opinion of lost profits in the amount of $323,195.

DWP did not present any testimony regarding the calculation of Lee's lost profits. Instead, in a vigorous cross-examination, DWP advocated for a contrary position and attempted to discredit Markee's opinions.

On cross-examination, Markee acknowledged that her calculation of Lee's average variable expenses for September 2017 to May 2018 changed from $8,208 in her initial report to $7,696 in the report she finalized for her trial testimony. The difference was due to her removal of monthly flood insurance payments of $511 from her calculation of monthly variable expenses in the latter report. Markee explained that flood insurance was a fixed expense and therefore had to be removed from monthly variable expenses.

Markee confirmed that she adjusted her calculation of Lee's lost profits to reflect a property tax savings of $12,747 for the period of March 2016 (the contractual date of completion) to June 2017 (the actual date of completion). Lee would have had to pay the additional $12,747 in property taxes if the project had been completed on time, but because there was no finished building in March 2016, Lee was not required to pay the additional property tax. Markee subtracted the $12,747 in property tax savings from Lee's lost profits.

Markee disagreed that the mortgage payments Lee made on the permanent loan once the building was complete were variable operating expenses that should be deducted from the total lost profits. She emphasized that financing was a fixed cost that did not depend on the

3

completion of the project. "[T]he financing and . . . the loan payments are going to happen regardless of whether or not you have revenues." Clerk's Papers (CP) at 118:14. Lee was making payments on the construction loan before the project was completed. Markee stated that interest and payments on financing debt are not considered in lost profit calculations because financing is a matter of personal choice. If financing was considered in lost profits, plaintiffs whose financing was more expensive would have smaller lost profits, even if all other variables were equal.

On redirect examination, Markee confirmed her opinion that her calculation of $323,195 in lost profits was correct.

At the conclusion of the evidence, the trial court instructed the jury regarding the measure of damages for Lee's breach of contract claim. The jury was instructed that

> In calculating the plaintiff's actual damages, you should determine the sum of money that will put the plaintiff in as good a position as he would have been in if both plaintiff and defendant had performed all of their promises under the contract.
>
> In this case Harold Lee claims lost profits. Harold Lee's damages may include net profits if Harold Lee proves with reasonable certainty that net profits would have been earned, but were not earned because of the breach of DWP General Contracting, Inc.

CP at 77.

> The court also gave the following instruction regarding expert testimony:
>
> A witness who has special training, education, or experience may be allowed to express an opinion in addition to giving testimony as to facts.
>
> You are not, however, required to accept his or her opinion. To determine the credibility and weight to be given to this type of evidence, you may consider, among other things, the education, training, experience, knowledge, and ability of the witness. You may also consider the reasons given for the opinion and the sources of his or her information, as well as considering the factors already given to you for evaluating the testimony of any other witness.

CP at 68.

The jury awarded Lee $323,195 in lost profits, the same amount provided in Markee's testimony and report.

DWP moved the court for a new trial under CR 59(a) or, in the alternative, for a remittitur under RCW 4.76.030. The trial court denied the motion. The court entered judgment against DWP for a total of $500,202, which included the jury's award of $323,195 in lost profits.

DWP appeals the trial court's order denying a new trial or in the alternative remittitur.

ANALYSIS

A.    MOTION FOR NEW TRIAL

DWP argues that the trial court erred in denying its motion for a new trial under CR 59(a) because the verdict (1) resulted from error in the assessment of the amount of recovery and (2) cannot be justified by any evidence or reasonable inference from the evidence and is contrary to law. We disagree.

1.    Legal Principles

When analyzing whether a verdict is excessive, we must recognize that the Washington Constitution delegates to the jury the determination of damages and protects that role. *Bunch v. King County Dep't of Youth Servs.*, 155 Wn.2d 165, 179, 116 P.3d 381 (2005). We review a trial court's decision on a motion for a new trial under CR 59(a) for abuse of discretion. *Collins v. Clark County Fire Dist. No. 5*, 155 Wn. App. 48, 81, 231 P.3d 1211 (2010).

CR 59(a)(6) allows the trial court to vacate a verdict and grant the moving party a new trial for "[e]rror in the assessment of the amount of recovery whether too large or too small, when the action is upon a contract, or for the injury or detention of property."

CR 59(a)(7) allows the trial court to vacate a verdict and grant the moving party a new trial if the trial court finds that "there is no evidence or reasonable inference from the evidence to

justify the verdict or the decision, or that it is contrary to law." Where the party requesting a new trial argues the verdict was not based on the evidence, we review the record to determine whether sufficient evidence supported the verdict. *Millies v. LandAmerica Transnation*, 185 Wn.2d 302, 316, 372 P.3d 111 (2016). There must be "no evidence or reasonable inference from the evidence to justify the verdict or the decision" or it must be "contrary to law" to grant a new trial. CR 59(a)(7). We will not disturb the jury's verdict where reasonable minds could differ on the question. *Millies*, 185 Wn.2d at 317.

2.   Analysis

DWP argues that the jury's award to Lee of lost profits as a result of DWP's breach was excessive and not supported by the evidence because Markee's report failed to deduct certain expenses from her calculation of Lee's lost profits. DWP contends that taking these additional expenses into account, Lee's lost profits amounted only to $84,994.

Here, the jury was instructed that in calculating Lee's actual damages, it should determine "the sum of money that will put the plaintiff in as good a position as he would have been in if both plaintiff and defendant had performed all of their promises under the contract" and that lost profits "may include net profits if Harold Lee proves with reasonable certainty that net profits would have been earned, but were not earned because of the breach of DWP General Contracting, Inc." CP at 77.

DWP argues that Lee's monthly payments on the permanent loan financing of the apartments and townhouses must be deducted from Lee's lost profits because the loan was an anticipated and necessary expense that would reduce the amount of his net profit. But Markee's testimony explained why financing costs should not be included in lost profit calculations. She

stated that Lee would have been required to pay financing costs whether or not DWP breached the contract, and therefore those costs were not lost profits *because of the breach*.

DWP tried to discredit Markee's opinion through cross-examination. DWP's counsel attempted to obtain Markee's agreement that his alternative calculation of Markee's lost profits, which deducted amounts for mortgage payments and all property taxes, was the correct calculation. DWP argues that Markee conceded that Lee would have realized net profits of $6,071 per month for 14 months, or $84,994 total, if the project had been completed on time. Markee stated that DWP's counsel's calculations were correct according to his methodology, but also indicated that his method was an incorrect way to calculate financial damages. And at the end of her testimony, Markee confirmed her opinion that her calculation of $323,195 in lost profits was correct.

DWP also argues that the whole of the property taxes and insurance must be deducted because although they were fixed expenses of Lee's business, his claims against DWP relate to the whole of the business and therefore all expenses of the business must be deducted to obtain his net profit. But DWP does not provide any Washington legal authority to support this argument, only a 1976 California Court of Appeals case.

" '[W]here the plaintiff's overhead or fixed expenses are not affected by the defendant's breach, no deduction should be made in calculating the profits which the plaintiff would have made had it not been for the breach.' " *Coast Trading Co., Inc. v. Parmac, Inc.*, 21 Wn. App. 896, 910, 587 P.2d 1071 (1978) (quoting *Buono Sales, Inc. v. Chrysler Motors Corp.*, 449 F.2d 715, 719-20 (3d Cir. 1971)). Here, Markee explained that flood insurance and all property insurance are fixed expenses and therefore should not be used to calculate monthly variable expenses. DWP presented no evidence to the contrary. Markee also testified that she had

adjusted her calculation of Lee's lost profits to reflect a property tax savings of $12,747 for the period of March 2016 to June 2017. No evidence in the record suggested that Lee would not have had to pay any property tax but for DWP's breach.

DWP disagrees with Markee's opinion and advocates for a contrary position. But regardless of the merits of the expert opinion Lee presented, the jury was free to adopt Markee's opinion in rendering its verdict. " 'The credibility of witnesses and the weight to be given to the evidence are matters within the province of the jury.' " *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 108, 864 P.2d 937 (1994) (quoting *State v. O'Connell*, 83 Wn.2d 797, 839, 523 P.2d 872 (1974)).

Further, DWP presented no evidence at trial to contradict Markee's calculations. As noted above, despite DWP's vigorous cross-examination, Markee confirmed her opinion that Lee's lost profits were $323,195. Therefore, the evidence supports the jury's lost profits award.

Accordingly, we hold that the trial court did not err in denying DWP's motion for a new trial under CR 59(a)(6) or CR 59(a)(7).

B.     REDUCTION OF THE VERDICT – REMITTITUR

DWP argues that in the alternative of granting a new trial, the trial court should have granted remittitur to reduce the verdict and subsequent judgment. We disagree.

The trial court may reduce a jury's damages award as an alternative to a new trial if the award is "so excessive . . . as unmistakably to indicate that the amount thereof must have been the result of passion or prejudice" if the affected party consents to the reduction. RCW 4.76.030. We review for abuse of discretion a trial court's denial of a motion for remittitur or reduction of the verdict. *Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 178 Wn. App. 702, 726, 315 P.3d 1143 (2013).

Remittitur under RCW 4.76.030 applies "if the award is outside the range of substantial evidence in the record, shocks the conscience of the court, or appears to have been arrived at as the result of passion or prejudice." *Id.* But the Supreme Court has stressed that appellate courts should infrequently exercise this authority. *Bunch*, 155 Wn.2d at 175.

Here, Lee presented evidence of lost profits in the amount of $323,195 caused by DWP's breach, which was reflected exactly in the jury's lost profit award as demonstrated by the verdict form. As described above, substantial evidence supported this amount. Therefore, the trial court did not abuse its discretion in denying DWP's request to reduce the jury award. Likewise, we decline to attempt a remittitur based on the appellate record.

CONCLUSION

We affirm the trial court's denial of DWP's motion for a new trial or remittitur.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

LEE, C.J.

CRUSER, J.

9