## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PATRICIA LANDES, | No. 56419-0-II |
| Respondent, | |
| v. | |
| PATRICK CUZDEY, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — This is the second appeal in Patricia Landes's unlawful detainer action seeking to evict Patrick Cuzdey from her property. Cuzdey appeals the trial court's writ of restitution and order awarding attorney fees and costs to Landes. First, Cuzdey argues that the trial court abused its discretion in excluding all contextual evidence of the alleged contract formation at issue, such as his history of residence on Landes's property, the facts of the quiet title action in *Cuzdey v. Landes*,[1] and the court order referenced in his protest letter in response to Landes's unilateral contract offer. Second, Cuzdey argues that the trial court erred in giving jury instruction 5 because it deprived the jury of its discretion to decide the issue of mutual assent, misstated the law, and failed to comply with this court's previous decision in *Landes v. Cuzdey*.[2] Third, Cuzdey argues that the trial court erred in granting Landes's request for attorney fees and

---

[1]    No. 75632-0-I (Wash. Ct. App. Apr. 3, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/756320.pdf.

[2]    No. 51841-4-II (Wash. Ct. App. Aug. 20, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2051841-4-II%20Unpublished%20Opinion.pdf.

costs under the Residential Landlord-Tenant Act of 1973 (RLTA).[3]  Landes requests attorney fees and costs on appeal.

We hold that the trial court did not abuse its discretion in either limiting or excluding Cuzdey's proffered contextual evidence and in excluding the court order at issue.  We decline to address the alleged legal error in instruction 5 because he failed to object at trial on the grounds he now argues on appeal.  However, we hold the trial court erred in granting Landes's request of attorney fees and costs under the RLTA.[4]  Therefore, we also deny Landes's request for attorney fees and costs on appeal.  Accordingly, we affirm the writ of restitution, reverse the order granting Landes's attorney fees and costs, and remand for the trial court to vacate the order awarding attorney fees and costs.

FACTS

I.  BACKGROUND[5]

In 1983, Landes and her husband (now deceased) purchased a five-acre parcel of undeveloped property southwest of Olympia.  Their daughter Karla[6] and her then-husband Cuzdey moved into a mobile home on the property in 1984.

---

[3] Ch. 59.18 RCW.

[4] In the alternative, Cuzdey argues that we should reverse and vacate the trial court's award of double damages if we hold that the RLTA (ch. 59.18 RCW) applies.  As Cuzdey acknowledges in his briefing, by arguing that attorney fees were improper under the RLTA (ch. 59.18 RCW), he effectively concedes that double damages were proper under the unlawful detainer statute (ch. 59.12 RCW) .  Because we reverse the trial court's order granting Landes's attorney fees and costs, we need not address Cuzdey's argument regarding double damages.

[5] The facts in this section are largely derived from this court's opinion in *Landes v. Cuzdey*, No. 51841-4-II (Wash. Ct. App. Aug. 20, 2019) (unpublished), http://www.courts.wa.gov/opinions/.  However, the citations to specific documents refer to the record provided to us in this current appeal.

[6] To distinguish her from Cuzdey, we refer to Karla by her first name.  No disrespect is intended.

In 1985, the Landeses purchased a newer mobile home for the Cuzdeys to live in. The Cuzdeys repaid the Landeses for the cost of the mobile home by making monthly payments until the amount was paid off in 2005. The Cuzdeys apparently never made *rent* payments to the Landeses for either the mobile home or the property on which it was located.

In May 2014, Karla and Cuzdey dissolved their marriage. Karla moved off the property, but Cuzdey continued to reside in the mobile home.

A.      Cuzdey's Quiet Title Action

In June 2014, Landes served Cuzdey with a 20-day notice to terminate tenancy of the mobile home and the real property. In response, Cuzdey filed an action to quiet title to the property. Cuzdey alleged that pursuant to a 1984 oral agreement, the Landeses had agreed to sell the property to him and Karla, and that the purchase price had been paid off with cash and work Cuzdey had performed on the property. Cuzdey later added a claim to quiet title to the mobile home, which he claimed was included in the sale of the property.

In August 2015, the trial court dismissed Cuzdey's claims on summary judgment. The court also found that Cuzdey's claim was frivolous and awarded Landes $36,000 in attorney fees under RCW 4.84.185. In addition, the court issued an order staying the dismissal of Cuzdey's quiet title claims for 60 days if Cuzdey filed an appeal and also paid into the court's registry a $36,000 bond and rent for two months at $1,500 per month.

Cuzdey filed a notice of appeal for what would become *Cuzdey v. Landes*,[7] (*Landes* I). He did not post bond at that time or make a rental payment into the court's registry for either August or September. The stay expired on October 6.

---

[7]    No. 75632-0-I, (Wash. Ct. App. Apr. 3, 2017) (unpublished), http://www.courts.wa.gov/opinions/.

On October 14, Landes filed a complaint for unlawful detainer. On November 13, the trial court entered an agreed order dismissing the unlawful detainer action if Cuzdey scheduled a hearing to determine the amount of security or bond required to stay the judgment in the quiet title action pending appeal. The hearing was to take place no later than December 11, or else Landes was free to obtain a new show cause hearing date on the unlawful detainer action, which could result in a writ of restitution.

B.      Notice to Begin Rental

On November 16, Landes served Cuzdey with a "NOTICE TO BEGIN RENTAL PURSUANT TO CHAPTER 59.18 RCW." Clerk's Papers (CP) at 23. The notice read,

> YOU ARE HEREBY NOTIFIED that the terms of your non-exclusive possession and occupancy of [the property's address] are hereby changed as of and after January 1, 2016, as follows:
>
>     1.      On or after January 1, 2016, your non-exclusive possession and occupancy of the subject premises will be considered a month-to-month tenancy subject to the provisions of the Residential Landlord-Tenant Act, RCW 59.18.
>
>     2.      Rent will be charged for your possession and occupancy of the subject premises, at the rate of $1,500.00 per month, payable in advance on or before the first day of each month, beginning January 1, 2016.

CP at 23. Cuzdey did not respond to this notice at that time.

C.      Supersedes Bond Hearing in the Quiet Title Action (*Landes* I)

The next day, Cuzdey set a hearing for his motion for stay or alternative security in the quiet title matter while it was pending on appeal. A hearing on Cuzdey's motion occurred on December 11. Cuzdey argued that the quiet title judgment should be stayed without bond because his only assets were personal property and that selling the personal property to raise money for the bond would take too long to affect a stay of the judgment.

The trial court ordered that the judgment against Cuzdey would be stayed on the condition that he posted a supersedeas bond or cash in the amount of $75,000 on or before January 11, 2016.

D.      Cuzdey's Protest Letter

By January 11, Cuzdey had not posted the bond.  The judgment in the quiet title action, which dismissed Cuzdey's claim, became effective against Cuzdey at that time.  Landes then sent Cuzdey a 3-day pay or vacate notice.

On January 19, Cuzdey sent a letter responding to Landes's 3-day pay or vacate notice which read:

Mrs. Landes,

I received your notice on 1.14.2016 at approximately [time not included.]

I have appealed the judgment quieting title and do not admit to being a tenant of Landes.  I am paying under protest and under order[8] of the superior court and reserve all of my rights, claims and arguments for purposes of the appeal and remand of the case.

I further reserve the right to seek reimbursement of the payment if/when I prevail on appeal.

Attached is a money order satisfying your demand for rent in the amount of $1,500.00 payable to Patricia Landes.

CP at 420.

In February, Cuzdey sent Landes a second money order for $1,500.  The memo line of the money order read "'RENT' FOR FEB 2016."  CP at 27.

---

[8] Cuzdey's reference to the court order in his letter was apparently a reference to the August 2015 order allowing a stay upon payment of $36,000 bond and rent payments at $1,500 per month, which stay expired in October 2015 as a result of Cuzdey's non-payment of either the bond or the two months of rent.  There was no other order requiring that he pay rent.

In March, the trial court granted Cuzdey a stay of enforcement of the quiet title action after he posted a supersedeas bond. Cuzdey stopped making $1,500 monthly payments to Landes, but he continued living on the property.

E.    *Landes* I Opinion[9]

Meanwhile, in April 2017, Division One of this court affirmed the dismissal of Cuzdey's quiet title action as to the real property, but reversed the trial court's dismissal of his quiet title claim to the mobile home because there was a genuine issue of fact regarding title of the mobile home. The court also reversed the trial court's attorney fee award.

F.    Unlawful Detainer Action (*Landes* II)

In October 2017, Landes sent Cuzdey another 3-day notice to pay or vacate, asserting that rent from January 2016 through October 2017 at $1,500 per month was still owing. Cuzdey remained on the property in the mobile home.

In November 2017, Landes filed a new unlawful detainer action against Cuzdey based on his failure to pay rent. *Cuzdey*, No. 75632-0-I, slip op. at 6. Landes also filed a motion for an order to show cause why a writ of restitution and final judgment should not be entered in her favor. The trial court granted the motion and scheduled a show cause hearing.

At the hearing, Landes argued that the parties had an enforceable rental agreement under the terms of her November 2015 notice to begin rental. Cuzdey argued that the trial court lacked subject matter jurisdiction to remove him from the property through an unlawful detainer action because he was a tenant at will, and that no enforceable rental agreement had been formed between the parties.

---

[9] *Cuzdey v. Landes*, No. 75632-0-I, (Wash. Ct. App. Apr. 3, 2017) (unpublished), http://www.courts.wa.gov/opinions/.

The trial court orally ruled that Cuzdey's remaining on the property and payment of rent for two months formed a rental agreement between the parties. The court entered the following findings of fact:

> 2.9 Mr. Cuzdey was represented by counsel when his attorney stated Mr. Cuzdey's circumstance was governed by Landlord Tenant Act. Based on transcripts and filings submitted in this action, Mr. Cuzdey's attorney and Mr. Cuzdey understood paying rent in January of 2016 would cause Mr. Cuzdey to enter into a contract governed by the Landlord Tenant Act.
> 2.10 The court has proper subject matter jurisdiction over this action based on Mr. Cuzdey entering into an enforceable contract in January of 2016.

CP at 37.

The court entered judgment for Landes and awarded her attorney fees and costs. The court also issued a writ of restitution restoring the property to Landes. Cuzdey appealed the writ of restitution and the judgment for unpaid rent and attorney fees to this court, which would become *Landes* II.[10]

II.     *LANDES* II

In *Landes* II, the overarching issue was "whether Landes's November 2015 Notice to [Begin] Rental and Cuzdey's actions following that notice converted the initial tenancy at will that *was not* subject to the unlawful detainer statute to a month-to-month tenancy that *was* subject to the unlawful detainer statute." No. 51841-4-II, slip op. at 11 (emphasis added). Landes argued that her notice to begin rental constituted a unilateral contract offer which Cuzdey accepted twice: by remaining on the property, and by making two rent payments.

In response, Cuzdey argued that simply remaining on the property that he already occupied as a tenant at will could not constitute acceptance by performance of Landes's offer of tenancy.

---

[10]   No. 51841-4-II (Wash. Ct. App. Aug. 20, 2019) (unpublished), http://www.courts.wa.gov/opinions/.

Cuzdey also argued that the payment of $1,500 in January and February did not constitute performance because the letter he included with the January 2016 payment expressly stated that the payment was not rent. Rather, Cuzdey contended that the letter constituted a counteroffer that he would pay $1,500 per month for a stay of Landes's attempt to evict him, which Landes accepted by depositing his checks.

First, regarding Landes's argument that Cuzdey accepted her unilateral offer by remaining on the property past January 1, 2016, after receiving her notice, we concluded an issue of material fact existed:

> Landes's argument would be stronger if Cuzdey had actually moved onto the property after receiving the Notice to Begin Rental. But Cuzdey already had been living on the property for decades and he simply remained there. Merely remaining on the property does not *necessarily* reflect an intent to perform on the offer.
>    On the other hand, on January 1, 2016, Cuzdey was in a precarious position. The trial court in the quiet title action had ruled that Landes owned the property and the mobile home, and Cuzdey had not posted a bond to stay execution of the court's ruling. Therefore, Landes had the legal right to evict Cuzdey if he did not accept the offer of a tenancy. It could be inferred from these circumstances that Cuzdey intended to perform on the unilateral contract offer by remaining on the property.

*Id*. at 15-16. "We conclude[d] that the evidence creates a genuine issue of fact regarding mutual assent—whether Cuzdey performed on Landes's unilateral contract offer by remaining on the property where he had lived for years." *Id*. at 16.

Second, regarding Landes's argument that "Cuzdey performed on her unilateral offer by paying $1,500 rent in both January and February 2016," we concluded an issue of material fact existed here, too. *Id*. at 16. We opined that "[t]his payment arguably constituted at least part performance of Landes's offer to create a tenancy with monthly rent payments of $1,500" based on the fact that the letter accompanying the January and February payment stated that it was in satisfaction of Landes's rent demand. *Id*. at 16. On the other hand, Cuzdey emphasized that he did not accept Landes's terms because he expressly stated in his letter that he did not admit to

8

being Landes's tenant, he was paying under protest, and he was paying under court order. Cuzdey claimed that he was entitled to make this counteroffer without being deemed to have performed on Landes's offer because the terms of his offer were different.

We ultimately concluded that Cuzdey was under no such court order to pay rent to Landes at the time. However, without regard to the alleged court order, we observed that,

> The facts of this case are challenging because Cuzdey did not simply perform on Landes's offer without any limitations. And he did not communicate a counteroffer to Landes before performing on her offer. He did both—he performed by paying rent *and* he communicated a counteroffer. Arguably, this constituted the type of conduct—Cuzdey attempting to make "what would amount to a new offer" to himself from Landes—that the court in [*Higgins v. Egbert*, 28 Wn.2d 313, 318, 182 P.2d 58 (1947)] stated was not allowed.

*Id*. at 16-17. Accordingly, "[w]e conclude[d] that the evidence creates a genuine issue of fact [again] regarding mutual assent—whether Cuzdey performed on Landes's unilateral contract offer by paying the offered rent amounts while stating that he did not admit to being a tenant and was paying under protest." *Id*. at 17.

So, because material issues of fact existed as to whether the parties reached mutual assent to a rental agreement, and therefore, whether the unlawful detainer statute applied in this case, "we [held] that the trial court erred in entering judgment in favor of Landes in the unlawful detainer action" and "we remand[ed] to the trial court for further proceedings." *Id*. at 17, 25.

III.     PRE-TRIAL PROCEEDINGS ON REMAND OF *LANDES* II

A.     Amended Complaint and Trial Setting Order

On March 19, 2021, Landes amended her complaint for claims of unlawful detainer (ch. 59.12 RCW), and in the alternative, ejectment (ch. 7.28 RCW). She requested relief in the form of termination and forfeiture of Cuzdey's tenancy via a writ of restitution, and in the alternative,

9

an order ejecting Cuzdey from the property. She also requested an order granting her back rent, attorney fees, costs, and other applicable charges.

On June 25, on Landes's motion, the trial court entered an order setting trial in this unlawful detainer case. The four issues set for the trial were the following:

a. Whether Defendant is a trespasser under RCW 59.12.030
b. Whether there was a rental agreement in place.
c. Whether this action is properly before the court as an unlawful detainer action, or whether this action should be converted to an ejectment action.
d. Whether the matter should be analyzed under [ch. 59.18 RCW] or [ch. 59.12 RCW].

No other issues may be presented at trial unless ordered by the Court

CP at 115-16.

B.     Motions in Limine

On July 7, Landes filed a motion in limine seeking to exclude any evidence or testimony attempting to establish that Cuzdey: has an ownership interest in the property, has a possessory right or interest in the property other than that of a tenant at will, and is entitled to compensation for previous alleged work or happenings on the property. Landes also moved to exclude the court order referenced in Cuzdey's protest letter because it was irrelevant and the law of the case doctrine barred Cuzdey from arguing that the order required him to pay rent. Landes further moved to exclude any evidence not relevant to the four issues discussed above.

In response, Cuzdey argued that Landes's motion would limit his ability to explain his position that ejectment is the proper cause of action in this case. First, Cuzdey argued that because the jury is being asked to decide whether ejectment or unlawful detainer is the appropriate cause of action, certain contextual evidence would be relevant and assist the jury in making that determination. Cuzdey's alleged contextual evidence included the factual history of his presence on the property, the facts of the quiet title action, his prior claim to title that he believed he had,

10

and previous work he had done on the property without compensation from the Landeses. Second, Cuzdey argued that the court order referenced in his protest letter should not be excluded because it is relevant to explain the terms of that letter. More specifically, Cuzdey contended that this court's conclusion regarding the court order was mere "dicta" and that "[he] believed that he was paying two months of rent pursuant to the Court's prior order regarding bond, and the order is consistent with that interpretation." CP at 327.

On August 9, the trial court entered an order granting Landes's motion. The court limited evidence, testimony, and argument to the four issues stated above in the June 25 trial setting order. The court barred and/or limited any testimony or evidence regarding factual happenings that occurred prior to Landes's unilateral contract offer because ownership, or any alleged ownership interest, was not at issue.[11] The court barred and/or limited any evidence of alleged work done on the property by Cuzdey prior to entering the alleged rental agreement, or claims for unjust enrichment, because such claims were not at issue. The court barred and/or limited any conversations or transactions that Cuzdey may have had with Landes's deceased husband because they are not at issue. The court excluded the court order referenced in Cuzdey's protest letter. The court reasoned that the court order was irrelevant, and that it would be inappropriate to have a jury interpreting the order, because this court in *Landes* II concluded that Cuzdey was not required by court order to make payments. However, while the order itself was excluded, the court permitted Cuzdey to present his protest letter and to testify as to his mistaken belief that he was required to make payments under court order.

---

[11] Indeed, any ownership claim Cuzdey alleged had been foreclosed at this point by the opinion in *Landes* I.

IV.    RELEVANT PORTIONS OF THE TRIAL

The case proceeded to jury trial from August 10 to 13, 2021. Landes, Tery Landes (Landes's son), and Cuzdey provided testimony.[12] Summarized below are the relevant portions of the trial testimony.

A.    Landes's Testimony

Landes provided testimony largely consistent with the facts set out above. Landes testified that she is the sole owner of the property and has lived there since 1997. She testified that Cuzdey and her daughter were once married and that they both lived at her property. However, they divorced in the spring of 2014.

In 2015, Landes's daughter moved off the property. Immediately after the divorce, Landes asked Cuzdey to leave her property. Cuzdey did not leave.

Landes testified that she offered Cuzdey to stay at the property past January 1, 2016, and pay rent. The offer letter, quoted above, was admitted into evidence. Landes testified that Cuzdey did in fact stay on the property past January 1, and paid rent on two occasions. Landes believed that her receipt of the two checks meant that Cuzdey accepted the terms of her offer.

On cross-examination, Landes testified that Cuzdey never paid rent until the divorce. Landes denied ever receiving Cuzdey's protest letter accompanying the two rent checks. Landes testified that she received the checks from her attorney and cashed them, but that her attorney never informed her about the protest letter.

---

[12] Landes's son generally testified about facts relevant to trespass and damages. Because trespass and damages are not at issue on appeal, we do not discuss his testimony.

B.       Cuzdey's Testimony

Cuzdey began his testimony by stating that he first stepped foot on the property in 1983 and had resided there since 1984.  Cuzdey's trial counsel then asked, "After the divorce was completed, you asserted a claim to title to—" which was immediately cut short by an objection. Report of Proceedings (RP) (Aug. 10, 2021) at 188.  Outside the presence of the jury, the court commented that:

> This jury already knows that there has been a dispute for quite some time.  And the jury needs some sort of context, and the court also fully expects that its orders will be complied with.  I don't know how the parties are going to navigate that, but it has not been going smoothly this afternoon.  I will require that the parties confer as to how this is going to be navigated.
>
> [Cuzdey's trial counsel], we could simply go through as an offer of proof all of [Cuzdey's] testimony outside the presence of the jury.  I would give my rulings and we would repeat it again tomorrow.  I would prefer not to do that.  I would prefer to have the parties confer about testimony.  That's not giving up secrets.  It's done in many times in cases where there are contested issues.  That's my suggestion to the parties.  I remain concerned that this witness is not being specific in his testimony and that is understandable given his limited experience, but in this court during this trial we must be very specific.
>
> So I understand the need to perhaps give some background, but I am not sure how it's going to come up in a way that is not objectionable in this court.  So I do want the parties to confer.

RP (Aug. 10, 2021) at 190.

After a brief recess, the parties eventually agreed to address the facts of the quiet title action and two appeals through a jury instruction in lieu of testimony:

> [THE COURT:] I'm very concerned about how testimony will address the prior litigation in superior court and the Court of Appeals' decision.  My preference—and I want the parties to consider this—is to simply allow testimony that there was an eviction proceeding, that it was ruled on in superior court and that it was addressed by the Court of Appeals, and based upon that we're now here for trial, something basic like that so that we don't get before the jury a whole lot of technical terms or confuse them about what happened before because what we— what we want the jury to address is the specific question of whether there was a rental agreement that was breached and whether there's a trespass, and those are the questions.  So I think it's necessary to give some background, but I want to be very careful about how we do that.

[Cuzdey's trial counsel], what's your response to that?

[CUZDEY'S TRIAL COUNSEL]: I would like to be able to give as much background as possible. I would appreciate some further instruction or clarification as to exactly what—what we can say about that that would be permissible.

THE COURT: [Landes's trial counsel], what's your thought about that?

[LANDES'S TRIAL COUNSEL]: My thought is that you nailed it on the head when you just stated that there was an eviction proceeding, it went up on appeal, and now it's back here for you to decide it, jury. I think that's it. I think that nails it on the—nails the hammer on the head so to speak. You can almost do it with just a jury instruction and not have the testimony. And that's why I put in the jury instructions, you know, there's a jury—he has no property interest because that's what the quiet title interest does. And I think there was—if you're wondering what happened between this long period of time, right? [W]e can just say there was a prior court case, there was an appeal, and now we're here for you to decide it.

THE COURT: Understood. And we're not yet at instructions. I appreciate that. We'll address that a little bit later.

[Cuzdey's trial counsel], would you agree to stick to that?

[CUZDEY'S TRIAL COUNSEL]: I think an instruction could resolve the issue and present it to the jury in a way that they would have the context that they need, and that would certainly satisfy the defense.

THE COURT: Excellent. So then we don't need to address it in testimony at all.

[CUZDEY'S TRIAL COUNSEL]: Yes, Your Honor.

RP (Aug. 10, 2021) at 196-98.

Testimony continued without further mention of the quiet title action. Cuzdey testified that he received a demand for rent from Landes in 2016, but felt that he did not owe her any rent because, as he perceived it, he was ordered by the court to pay her for a 60-day period to hold off an eviction.

Cuzdey testified that he delivered the January rent payment to Landes's attorney along with the protest letter quoted above. Cuzdey testified that he told the attorney's receptionist, "'First I want you to accept—you got to take a look at the disclaimer and accept it or not.'" RP (Aug. 10, 2021) at 202. He testified that Landes's attorney stepped out of his office, read it, and gave the receptionist a nod. The protest letter was admitted into evidence and read aloud to the jury.

Cuzdey believed he was under the court's order at the time to make the January and February 2016 rent payments. Cuzdey testified that he would not have made those payments if he believed that he was under no such order to pay rent because he never intended to accept Landes's rental terms.

Cuzdey believed that Landes accepted his counteroffer in his protest letter by cashing the checks. He testified that it was not his intent to perform under Landes's unilateral contract offer by staying on the property after January 1, 2016.

V.   JURY INSTRUCTIONS

Based on the above agreement between the parties, the trial court provided a jury instruction concerning the facts of the quite title action and both appeals. Jury instruction 4 read:

> The Defendant was previously evicted from the Plaintiff's real property in 2018. After an appeal, a court determined that a jury must decide whether the parties entered into a unilateral contract and whether that unilateral contract was breached.
> The Defendant is not an owner of Plaintiff's real property.
> The Defendant was not required by a court order to pay rent to the Plaintiff at the time she made a unilateral contract offer.

CP at 455. Cuzdey did not object to this instruction.

Jury instruction 5 set forth the elements regarding the formation of a unilateral contract between Landes and Cuzdey. The version of instruction 5 provided to the jury stated:

> The Plaintiff has the burden of proving each of the following propositions to prove that a unilateral contract existed between the Plaintiff and the Defendant:
> (1) That Plaintiff made a unilateral contract offer or promise to Defendant; and
> (2) That Defendant substantially performed on the terms of the Plaintiff's unilateral contract promise by (a) non-exclusively occupying or using Plaintiff's real property on or after January 1, 2016, or (b) by paying rent as offered by Plaintiff on or after January 1, 2016; and
> (3) That there was mutual assent, meaning Plaintiff and Defendant's reasonable actions and words at the time of the unilateral contract promise demonstrated intent to substantially perform on the terms of Plaintiff's unilateral contract promise. In determining intent to substantially perform on Plaintiff's

15

unilateral contract promise, you must look at the plain language of the unilateral contract promise and consider the parties' reasonable words and actions, disregarding the parties' unexpressed personal feelings, prejudices, interpretations, or mental perceptions; and

(4) That there was consideration. Consideration is any act, forbearance, creation, modification or destruction of a legal relationship, or return promise given in exchange. If you find that Defendant performed on the unilateral contract promise by occupying or using Plaintiff's real property on and past January 1, 2016, or that Defendant paid rent to Plaintiff pursuant to the unilateral contract promise, or that any other act, benefit gained, or forbearance by Defendant constituted performance on the unilateral contract promise, then there was consideration.

If you find from your consideration of all the evidence that each of these propositions has been proved, your answer to Question #1 on the Special Verdict Form must be "Yes". On the other hand, if you find from your consideration of all the evidence that each of these propositions has not been proved, your answer to Question #1 on the Special Verdict Form must be "No".

CP at 456-57.

In a substantially similar draft instruction, the trial court informed the parties that instruction 5 did not originally include element 1 (that a unilateral contract offer was made), but instead started with element 2 (regarding substantial performance). After the trial court asked the parties if they had any issue with the proposed draft instructions, the following exchange occurred:

[CUZDEY'S TRIAL COUNSEL]: Your Honor, I was just going to propose for completeness' sake adding a—an additional number one so that the offer element was there just to say plaintiff made an offer to defendant. And this would be Instruction No. 5.

THE COURT: So you would have four elements with the first element being that "Plaintiff made a unilateral offer to defendant."

[CUZDEY'S TRIAL COUNSEL]: Yes, Your Honor.

[LANDES'S TRIAL COUNSEL]: "Unilateral contract offer."

[CUZDEY'S TRIAL COUNSEL]: No objection to that.

THE COURT: [Landes's trial counsel], you agree that that would be one and then the paragraph we just agreed to would be two?

[LANDES'S TRIAL COUNSEL]: Yes. As long as it says "unilateral contract offer" just because that's consistent.

THE COURT: Okay. And [Cuzdey's trial counsel], do you agree to the modification to delete "material terms" and that possessive after "promise?"

[CUZDEY'S TRIAL COUNSEL]: No objection there. Although since we're using "offer" in number one now it may be more consistent to use "offer" instead of "promise" for number two. But I will leave it up to the court on that issue.

16

THE COURT: Well, I think that there is—in number eight it talks about "offer or promise" so I think those are clearly interchangeable.

[LANDES'S TRIAL COUNSEL]: I agree.

THE COURT: [Cuzdey's trial counsel], do you think it's necessary to make a change in Instruction No. 5 to make them all consistent?

[CUZDEY'S TRIAL COUNSEL]: No, Your Honor. It was merely a consideration.

THE COURT: I appreciate that.

[Cuzdey's trial counsel], do you have any issues at all remaining with the court's proposed instructions or verdict form?

[CUZDEY'S TRIAL COUNSEL]: I believe wasn't it Instruction 11 that we added a "Defendant denies this claim" to the end of the first paragraph?

THE COURT: We just did that, yes. So that's—it's in my handwriting, but I haven't typed it up yet.

[CUZDEY'S TRIAL COUNSEL]: I guess—I'm thinking—

THE COURT: My apologies. I didn't put that in yet, but yes. Thank you for catching that.

[CUZDEY'S TRIAL COUNSEL]: Otherwise no further objections.

RP (Aug. 12, 2021) at 369-71.

Once the trial court finalized jury instructions consistent with the above discussion and quoted instruction, the court again asked whether the parties had any objections or exceptions. Cuzdey's counsel responded "No, Your Honor." RP (Aug. 12, 2021) at 379.

VI.     JURY VERDICT

On August 13, the jury found that Cuzdey entered into a unilateral contract for the use of Landes's real property and that he breached the contract. The jury found that Cuzdey owed Landes $97,500 in back rent.

VII.    POST-TRIAL MOTIONS AND ORDERS

On September 13, Landes filed a motion requesting the trial court to enter an order for a writ of restitution and a judgment for double damages under RCW 59.12.170. Landes also requested attorney fees and costs because the rental agreement incorporated the provisions of the RLTA, chapter 59.18 RCW, by reference.

17

In his response brief, Cuzdey disputed the applicability of double rent and attorney fees under chapter 59.12 RCW (the unlawful detainer statute) because there was no dispute that the case concerned a rental for land only, which is subject to the RLTA, chapter 59.18 RCW. Cuzdey cited *Parsons v. Mierz*, No. 49324-1-II, (Wash. Ct. App. Apr. 10, 2018) (unpublished), http://www.courts.wa.gov/opinions/, for the proposition. Cuzdey appeared to provide no argument as to applicability of attorney fees under the RLTA.

At a hearing on October 15, Landes requested the trial court to enter a writ of restitution and an award for double damages under chapter 59.12 RCW because her counsel conceded that this case concerned a rental of land only. Landes also argued that an award of attorney fees and costs were appropriate because "[t]he rental agreement incorporated [chapter] 59.18 [RCW's] provisions which include[s] an attorney's fees and costs provision. Mr. Cuzdey has not argued against the attorney's fees and costs." RP (Oct. 15, 2021) at 8.

Cuzdey countered that, under *Parsons*, when a rental for only land is concerned, "either . . . double fees or no attorney's fees were awardable under that circumstance." RP (Oct. 15, 2021) at 9. As to attorney fees, Cuzdey appeared to acknowledge that the RLTA provides for attorney fees and costs, but asked the court to deny Landes's request "in its discretion." RP (Oct. 15, 2021) at 10.

In its oral ruling, the trial court granted Landes's request for a writ of restitution and attorney fees. The court did not address the issue of double damages or the amount of attorney fees and costs, but permitted the parties to submit additional briefing on those issues.

On October 18, the trial court entered an order concluding that Cuzdey was liable for unlawful detainer and issued a writ of restitution. It did not issue a written order regarding its oral ruling on attorney fees.

On November 15, Landes filed a supplemental brief on the issue of double damages and attorney fees, mirroring her arguments above. Landes argued that double damages were appropriate under chapter 59.12 RCW because this case concerned the unlawful detainer of land only. Landes also argued that attorney fees and costs were proper because the rental agreement incorporated the provisions of the RLTA by reference.

In his supplemental response brief, Cuzdey appeared to change his position. Cuzdey argued that the trial court should deny Landes's request for attorney fees and costs because the RLTA did not apply when a rental for land only is concerned. Cuzdey also argued that the doubling of any rent should be only for the period during which he actually unlawfully detained the property under RCW 59.12.170.

At a hearing on January 21, 2022, the trial court concluded that double damages were appropriate as a matter of law. As to attorney fees and costs, the court stated that "my review of this file indicates that the court had previously granted the request for attorney's fees but not indicated an amount. So, the court's order at this time is, again, to allow and to provide for attorney's fees." RP (Jan. 21, 2022) at 8-9.

On February 25, the trial court entered an order granting Landes's request for double damages under RCW 59.12.170, which totaled $204,000 (this amount included additional rent and holdover amounts). The court also entered an order granting Landes's request for reasonable attorney fees, which totaled $30,552.75, and statutory costs, which totaled $352.44.

Cuzdey appeals the writ of restitution and order granting double damages, attorney fees, and costs.

ANALYSIS

I.     EVIDENTIARY RULINGS

Cuzdey argues that the trial court abused its discretion by excluding all contextual evidence of alleged contract formation, such as the history of his residence on the property, the facts of the quiet title action and both appeals, and the court order referenced in his protest letter, because that evidence was relevant to explain the terms of his protest letter under the context rule of contract interpretation. Cuzdey also argues that the trial court abused its discretion by excluding his alleged contextual evidence because, by doing so, it failed to comply with this court's prior decision in *Landes* II. We disagree.

A.     Legal Principles

We review the trial court's evidentiary rulings for an abuse of discretion. *Spencer v. Badgley Mullins Turner, PLLC*, 6 Wn. App. 2d 762, 784, 432 P.3d 821 (2018). The trial court "abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds or reasons." *Id.* "[We] can affirm an evidentiary ruling on any ground supported by the record." *Id.* at 785.

Generally, only relevant evidence is admissible. *Gorman v. Pierce County*, 176 Wn. App. 63, 84, 307 P.3d 795 (2013); ER 402. "Relevant evidence has any tendency to make a fact of consequence more likely or less likely; this definition sets a low threshold." *Gorman*, 176 Wn. App. at 84; ER 401. Evidence which is not relevant is not admissible. ER 402. "However, a trial court may exclude relevant evidence if the risk of unfair prejudice, confusion of the issues, misleading the jury, or waste of time substantially outweighs its probative value." *Gorman*, 176 Wn. App. at 84; ER 403. "Trial courts have 'wide discretion' in weighing the probative value of evidence against its potentially prejudicial impact." *Budd v. Kaiser Gypsum Co., Inc.*, 21 Wn.

20

App. 2d 56, 82, 505 P.3d 120 (internal quotation marks omitted) (quoting *Gerlach v. Cove Apts., LLC*, 196 Wn.2d 111, 120, 471 P.3d 181 (2020)), *review denied*, 199 Wn.2d 1030 (2022).

Chapter 59.12 RCW governs unlawful detainer actions and allows for a summary proceeding that provides an expedited means for landlords and tenants to resolve competing claims to possession of leased property. *Angelo Prop. Co. v. Hafiz*, 167 Wn. App. 789, 808, 274 P.3d 1075 (2012). An unlawful detainer action is an alternative to the common law action of ejectment. *River Stone Holdings NW, LLC v. Lopez*, 199 Wn. App. 87, 92, 395 P.3d 1071 (2017). Unlawful detainer actions are "limited to resolving questions related to possession of property and related issues like restitution of the premises and rent." *Id*. Issues unrelated to possession cannot be resolved in an unlawful detainer action; those issues must be addressed in a general civil action. *Angelo Prop*., 167 Wn. App. at 809.

B.      Cuzdey's "Contextual Evidence"

As an initial matter, we note that Cuzdey assigns error to the trial court's order granting Landes's motion in limine contending that "[t]he trial court unreasonably prevented the jury from hearing any historical context by excluding all evidence or testimony of 'factual happenings that occurred prior to the unilateral contract/rental agreement offer or promise,'" which includes his history of residence on the property and the proceedings in the quiet title action. Br. of Appellant at 37 (quoting CP at 408). We disagree with Cuzdey's characterization of that pre-trial order.

Here, the trial court did not wholesale exclude Cuzdey's ability to present testimony or evidence regarding the factual occurrences of the period prior to Landes's unilateral contract offer (such as his history of residence on the property or the facts of the quiet title action) in its pre-trial order. Rather, the court merely limited such evidence.

21

Cuzdey argues that the trial court abused its discretion in excluding evidence or testimony about his history of residence on Landes's property. We disagree because the record clearly shows that he *did* in fact testify as to residing on Landes's property since 1984. Accordingly, this argument fails.

Next, Cuzdey argues that the trial court abused its discretion in excluding any evidence or testimony about the quiet title action and both appeals. We disagree.

Here, Cuzdey mistakenly contends that "[t]he trial court did not allow Cuzdey to testify regarding the 2014 attempted eviction or the quiet title litigation" during the midst of trial. Br. of Appellant at 20. This assertion is inaccurate. As discussed above, the record shows that the trial court *did* permit such testimony, but recognized that admitting all of the facts of the quiet title action and both appeals could confuse and mislead the jurors about the issues at trial. Thus, the trial court ruled that such testimony would be limited. True, the facts of the quiet title action and both appeals were relevant to explain the terms of Cuzdey's protest letter because, under the context rule, we can consider extrinsic evidence to determine the meaning of specific words and terms used in a contract. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 713, 334 P.3d 116 (2014). But despite its relevance, we conclude that the trial court's ruling was not manifestly unreasonable or based on untenable grounds because it properly exercised its wide discretion by limiting such testimony on the ground that its probative value would be substantially outweighed by the danger of confusing and misleading the jury of the issues.[13] ER 403.

---

[13] Although not analyzed on these grounds, the probative value of the facts of the quiet title action would have also been substantially outweighed by the danger of unfair prejudice. Such evidence touches on his loss of claim to Landes's property—the same property he had lived on for decades with Landes's daughter up until their divorce—and therefore, could have stimulated an emotional response in the jurors. *Budd*, 21 Wn. App. 2d at 82. Thus, such testimony would have also been properly limited on this ground as well.

Regardless, we note that Cuzdey's argument is also without merit because the record shows that he agreed to relegate the facts of the quiet title action and both appeals to a jury instruction. That instruction was in fact given to the jury based on this agreement, which Cuzdey did not object to. Therefore, Cuzdey is incorrect to assert that the trial court prevented him from providing testimony about quiet title action or both appeals—that was his trial counsel's decision. *See Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739, 774, 320 P.3d 77 (2013) ("Under the invited error doctrine, a party may not set up an error at trial and then complain of it on appeal."). Accordingly, this argument fails.

Cuzdey argues that the trial court abused its discretion in excluding his alleged contextual evidence because, in *Landes* II, we directed the trial court to admit all such evidence for the jury's consideration. We disagree.

In the previous appeal, we looked to the facts and circumstances surrounding Landes's unilateral contract offer to determine if an issue of fact remained as to mutual assent by virtue of Cuzdey's remaining on the property. Such facts included: Cuzdey's history of occupancy on the property, the fact that Landes arguably had the legal right to evict Cuzdey if he did not accept her offer based on the trial court's adverse ruling in the quiet title action, and his failure to post a supersedeas bond while the quiet title action was on appeal. Based on those circumstances, "[w]e conclude[d] that the evidence create[d] a genuine issue of fact regarding mutual assent—whether Cuzdey performed on Landes's unilateral contract offer by remaining on the property where he had lived for years." *Landes*, No. 51841-4-II, slip op. at 16. Thus, "[w]e reverse[d] the writ of restitution . . . and we remand[ed] to the trial court for further proceedings." *Id*. at 25.

Again, the trial court did not exclude testimony regarding the quiet title action or both appeals, as explained above. In any event, our brief discussion of the quiet title action was not a

23

directive to the trial court to admit all of the facts of that case or permit Cuzdey to explain his alleged claim of ownership to the jury in this unlawful detainer action. Rather, when we reversed the writ of restitution and remanded to the trial court for further proceedings, we signaled our expectation that "the trial court will exercise its discretion to decide any issue necessary to resolve the case." *In re Marriage of Rockwell*, 157 Wn. App. 449, 453, 238 P.3d 1184 (2010). Because the trial court properly exercised is wide discretion in limiting testimony about the facts of the quiet title case and both appeals, as explained above, we conclude that Cuzdey's argument fails.

Accordingly, we hold that the trial court did not abuse its discretion in limiting or excluding any evidence or testimony about the factual happenings that occurred prior to Landes's unilateral contract offer.

C.      The Court Order Referenced in Cuzdey's Protest Letter

Cuzdey argues that the trial court abused its discretion in excluding the court order referenced in his protest letter because, without it, he could not explain the specific order he was referencing or how it came about. We disagree.

Here, the court order was indeed relevant to explain the terms of Cuzdey's protest letter. *Viking Bank*, 183 Wn. App. at 713 (discussing the context rule). However, the probative value of the court order would have been substantially outweighed by the danger of confusing or misleading the jurors into concluding that Cuzdey *was* under a court order to make rent payments. We have already concluded that he was not. *See Landes*, No. 51841-4-II, slip op. at 16 n.4. Because relevant evidence may be excluded when its probative value is substantially outweighed by the danger of confusing or misleading jurors, we conclude that the trial court did not abuse its discretion in excluding the court order. *Spencer*, 6 Wn. App. 2d at 785 ("[We] can affirm an evidentiary ruling on any ground supported by the record.").

24

Additionally, as explained above, we have already concluded that, at the time of Landes's unilateral contract offer, Cuzdey was under no court order to pay rent. *See Landes*, No. 51841-4-II, slip op. at 16 n.4. Under the law of the case doctrine, our previous conclusion on this issue bound the trial court and parties to follow it. *Lodis v. Corbis Holdings, Inc.*, 192 Wn. App. 30, 58, 366 P.3d 1246 (2015). To the extent Cuzdey appears to contend he should have been allowed to argue otherwise, he is incorrect. Therefore, the trial court properly excluded the court order under the law of the case doctrine as well.

Accordingly, we hold that the trial court did not abuse its discretion in its evidentiary rulings.

II.     JURY INSTRUCTIONS

Cuzdey argues that the trial court erred in giving jury instruction 5 because that instruction deprived the jury of its discretion to decide the disputed issue of mutual assent and also misstated the law. We decline to address the alleged instructional error.

A.      Legal Principles

"Jury instructions are generally sufficient if they are supported by the evidence, allow each party to argue its theory of the case, and, when read as a whole, properly inform the trier of fact of the applicable law." *Helmbreck v. McPhee*, 15 Wn. App. 2d 41, 57, 476 P.3d 589 (2020), *review denied*, 196 Wn.2d 1047 (2021). We review a trial court's instructions for legal error de novo. *Id*. Absent legal error, we review instructions for an abuse of discretion. *Id*.

CR 51 governs jury instructions. CR 51(f) provides:

Before instructing the jury, the court shall supply counsel with copies of its proposed instructions which shall be numbered. Counsel shall then be afforded an opportunity in the absence of the jury to make objections to the giving of any instruction and to the refusal to give a requested instruction. *The objector shall state distinctly the matter to which counsel objects and the grounds of counsel's*

25

*objection, specifying the number, paragraph or particular part of the instruction to be given or refused and to which objection is made*.

(Emphasis added.)  "This [rule] gives the trial court the opportunity to remedy instructional error and reduces unnecessary appeals and retrials."  *Millies v. LandAmerica Transnation*, 185 Wn.2d 302, 310, 372 P.3d 111 (2016).  "Hypertechnicality is not required."  *Id*.  However, "the objection must apprise the trial judge of the precise points of law involved and when it does not, those points will not be considered on appeal."  *Stewart v. State*, 92 Wn.2d 285, 298, 597 P.2d 101 (1979). Failure to object to an instruction in compliance with CR 51(f) may preclude appellate review of the instruction.  *Millies*, 185 Wn.2d at 310; RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court.").

### B.    Cuzdey Failed to Object to Instruction 5

Here, Cuzdey did not object to instruction 5 on the grounds he raises now on appeal. Rather, Cuzdey only asked the trial court to add element 1 to that instruction.  Because Cuzdey did not object to instruction 5 on the grounds he raises now, we hold that Cuzdey failed to preserve his challenge to the court's instruction, and we decline to consider this issue.

### C.    Cuzdey's Reliance on RAP 12.9 Does Not Permit Review

Cuzdey appears to argue that we may nevertheless review the alleged instructional error for the first time on appeal under RAP 12.9.  We disagree.

When we interpret court rules, our review is de novo.  *Phongmanivan v. Haynes*, 195 Wn.2d 309, 313, 458 P.3d 767 (2020).  "As with methods of statutory interpretation, we strive to determine and carry out the rule drafters' intent."  *Id*.  "'We determine that intent by examining the rule's plain language not in isolation but in context, considering related provisions, and in light of the statutory or rule-making scheme as a whole.'"  *Id*. (quoting *State v. Stump*, 185 Wn.2d 454,

460, 374 P.3d 89 (2016). "[W]e avoid interpreting court rules in a manner that would render substantive portions meaningless." *Id*. at 313-14.

RAP 12.9(a) provides that,

The appellate court may recall a mandate issued by it to determine if the trial court has complied with an earlier decision of the appellate court given in the same case. The question of compliance by the trial court may be raised by motion to recall the mandate, or by initiating a separate review of the lower court decision entered after issuance of the mandate.

Here, Cuzdey's reliance on RAP 12.9 is misguided because he fails to give effect to RAP 2.5(a), which states that "[t]he appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 12.9 does not permit an appellant to raise an instructional error for the first time on appeal because doing so would render RAP 2.5(a) meaningless. Additionally, Cuzdey fails to carry his burden to demonstrate that the alleged instructional error constituted a manifest error affecting a constitutional right to allow us to address his argument for the first time on appeal. RAP 2.5(a)(3).

Accordingly, we affirm the writ of restitution.

III.     ATTORNEY FEES AND COSTS

Cuzdey argues that the trial court erred in granting Landes her attorney fees and costs under the contract's alleged incorporation of the RLTA because the RLTA does not apply when there is a rental for land only. Cuzdey relies on our unpublished decision in *Parsons*, No. 49324-1-II, as persuasive authority to support his proposition. We agree.

A.       Legal Principles

We award attorney fees to the prevailing party "'only on the basis of a private agreement, a statute, or a recognized ground of equity.'" *Tedford v. Guy*, 13 Wn. App. 2d 1, 17, 462 P.3d 869 (2020) (quoting *Equitable Life Leasing Corp. v. Cedarbrook*, Inc., 52 Wn. App. 497, 506, 761

P.2d 77 (1988)). "We review whether there is a legal basis for an award of attorney fees de novo." *Allen v. Dan and Bill's RV Park*, 6 Wn. App. 2d 349, 372, 428 P.3d 376 (2018).

"The unlawful detainer statute [ch. 59.12 RCW] contains no provision for the award of attorney fees." *Fed. Nat'l Mortg. Ass'n v. Steinmann*, 181 Wn.2d 753, 755, 336 P.3d 614 (2014). However, the RLTA, chapter 59.18 RCW, does allow for attorney fees and costs. RCW 59.18.290(2)-(3), 410(1). Under the RLTA, the trial court may award costs and attorney fees "to a landlord who obtains a writ of restitution against a holdover tenant." *Fed. Nat'l Mortg. Ass'n*, 181 Wn.2d at 755; RCW 59.18.290(2).

Where a person does not occupy his or her residence "pursuant to a rental agreement establishing a landlord-tenant relationship" under the RLTA, no attorney fees are available for the prevailing landlord. *Fed. Nat'l Mortg. Ass'n*, 181 Wn.2d at 755. The terms "rental agreement," "landlord," and "tenant" are terms of art under the RLTA. *See* RCW 59.18.030. Thus, the RLTA only applies if (1) there is a "rental agreement," (2) Cuzdey is a "tenant," and (3) Landes is a "landlord."

B.      *Parsons v. Mierz*

In *Parsons*, the Parsons owned certain real property in Pierce County and rented "Space 9" to Mierz. No. 49324-1-II, slip op. at 2. Mierz had a motor home there and it was not a permanent structure on the Parsons's real property. *Id*. The Parsons filed an unlawful detainer action against Mierz and they succeeded. *Id*. After issuing a writ of restitution, the trial court awarded attorney fees to the Parsons. *Id*. at 3.

On appeal, Mierz argued the court erred in awarding attorney fees because he was not a "tenant," the Parsons were not his "landlords," and the parties did not have a "rental agreement" under the applicable definitions of the RLTA. *Id*. at 4. Mierz argued that because the Parsons did

28

not lease him a "dwelling unit" within the meaning of the RLTA, the other statutory definitions were inapplicable. *Id*. This argument was "critical" because "'the definitions of 'rental agreement,' 'tenant,' and 'landlord' all incorporate[d] the definition of 'dwelling unit.'" *Id*. (quoting former RCW 59.18.030(14), (25), (27) (2019)). We agreed with Mierz. *Id*.

Under the former version of the RLTA, a "dwelling unit" was defined as "'a structure or that part of a structure which is used as a home, residence, or sleeping place . . . including but not limited to single-family residences and units of multiplexes, apartment buildings, and mobile homes.'" *Id*. at 5 (quoting former RCW 59.18.030(9) (2019)). The term "structure" was not further defined by the RLTA, so we resorted to the principles of statutory interpretation and looked to the ordinary dictionary definition of that term. *Id*. Looking in part to Webster's Dictionary, we defined "structure" to mean: "'something constructed or built," as well as 'something made up of more or less interdependent elements or parts.'" *Id*. (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY 2267 (2002)). Because Space 9 only constituted a rental for a portion of real property, we concluded that Space 9 was not a "structure", and therefore, not a "dwelling unit" within the meaning of the RLTA. *Id*. We then applied this conclusion to the critical terms in the RLTA: "rental agreement," "tenant," and "landlord." *Id*.

Former RCW 59.18.030(25) defined "Rental agreement" as "all agreements which establish or modify the terms, conditions, rules, regulations, or any other provisions concerning the use and occupancy of a *dwelling unit*." (Emphasis added.) We concluded that there was no "rental agreement" as defined by the RLTA because space 9 was not a "dwelling unit" and "[t]he agreement between Mierz and the Parsons was for the rental of ground space and utilities" only. *Parsons*, No. 49324-1-II, slip op. at 6.

29

Former RCW 59.18.030(27) defined a "tenant" as "any person who is entitled to occupy a *dwelling unit* primarily for living or dwelling purposes under a rental agreement." (Emphasis added.) Again, because Space 9 was not a dwelling unit, we concluded that Mierz was not the Parsons' "tenant" under the RLTA. *Parsons*, No. 49324-1-II, slip op. at 6.

Former RCW 59.18.030(14) defined a "Landlord" as the "owner, lessor, or sublessor of the *dwelling unit* or the property of which it is a part." (Emphasis added.) We observed that the former version of the RLTA further defined "property" as "*all dwelling units* on a contiguous quantity of land managed by the same landlord as a single, rental complex." Former RCW 59.18.030(19) (emphasis added). Reading these definitions together, we concluded that "a 'landlord' is someone who owns 'the dwelling unit' or 'all dwelling units on a contiguous quantity of land' of which an individual dwelling unit is part." *Parsons*, No. 49324-1-II, slip op. at 7 (quoting former RCW 59.18.030(19)). We noted that "the Parsons owned only the spaces to which motor home owners hooked up their individual units. They neither owned a dwelling unit, nor all of the dwelling units on a contiguous quantity of land." *Id*. at 7. Accordingly, we concluded that the Parsons were not "landlords" under the RLTA. *Id*.

In sum, "[b]ecause there was no rental agreement for a dwelling unit," we held that "the RLTA [did] not apply to Mierz's eviction and the trial court erred by awarding attorney fees." *Id*. at 7. Accordingly, we reversed the award and remanded for further proceedings. *Id*. at 1, 8.

C.    We Decline to Apply RAP 2.5(a) to Cuzdey's Argument

As an initial matter, Landes argues that we should decline to address the merits of Cuzdey's attorney fees argument because he improperly raises it for the first time on appeal. We disagree.

30

Washington is a written order state. *State v. Molina*, 16 Wn. App. 2d 908, 922, 485 P.3d 963, *review denied*, 198 Wn.2d 1008 (2021). The written order is controlling and the trial court's oral statements are no more than a verbal expression of its informal opinion at the time. *Id*.

Here, while the trial court orally granted Landes's request for attorney fees on October 15, 2021, it did not issue a written order until February 25, 2022. Cuzdey raised issue with the legal basis for attorney fees in the October 15, 2021 hearing and in his response supplemental brief, which was submitted before the written order was issued. Under these circumstances, we conclude that Cuzdey properly raised the issue below for us to consider on appeal. Accordingly, Landes's argument fails.

D.      The Trial Court Erred in Awarding Attorney Fees and Costs

Cuzdey argues that the RLTA does not apply here because, like *Parsons*, the rental here was for real property only. We agree.

While *Parsons* concerned the former version of RCW 59.18.030, the definitions remain the same in the current 2021 version—the only difference being the numbering of the statutory subsections. *Compare* RCW 59.18.030(10), (16), (23), (30), (34) with former RCW 59.18.030(9), (14), (19), (25), (27) (2019). Because *Parsons* correctly applied the rules of statutory interpretation to the issue before it, we find that decision persuasive. Accordingly, we adopt the *Parsons* court's analysis of the RLTA.

Here, there is no dispute that the rental at issue was for land only. Under this circumstance, there is simply no rental for a "dwelling unit" because no "structure" is involved under the ordinary definition of that term. RCW 59.18.030(10). As explained above, this is conclusion is critical because the definition of "tenant," "landlord," and "rental agreement" all incorporate the term "dwelling unit." RCW 59.18.030(16), (30), (34). Because Cuzdey did not rent a "dwelling unit,"

he could not be a "tenant," Landes could not be a "landlord," and there could be no "rental agreement" so as to have the RLTA apply. RCW 59.18.030(16), (30), (34). Accordingly, we hold that the trial court erred by granting attorney fees and costs to Landes.

Landes argues that the trial court did not err in awarding attorney fees and costs because the rental agreement incorporated the provisions of the RLTA by reference. We disagree.

Here, even if the rental agreement properly incorporated attorney fees provision the RLTA by reference, that does not mean we will ignore its applicable statutory definitions. "When interpreting statutes, we must discern and implement the intent of the legislature. We look first to the plain meaning of the statutory language, and we interpret a statute to give effect to all language, so as to render no portion meaningless or superfluous." *Benson v. State*, 4 Wn. App. 2d 21, 26, 419 P.3d 484 (2018) (quoting *Rivard v. State*, 168 Wn.2d 775, 783, 231 P.3d 186 (2010)). Because Landes's argument would require us to disregard the applicable definitions set out in RCW 59.18.030, we conclude that her argument fails.

Accordingly, we reverse the trial court's order granting attorney fees and costs to Landes.[14]

## IV.  ATTORNEY FEES ON APPEAL

Landes requests an award of reasonable attorney fees and costs on appeal pursuant to the RLTA. We deny her request.

RAP 18.1(a) provides that if "applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before either the Court of Appeals or Supreme

---

[14] In the alternative, Cuzdey argues that we should reverse and vacate the trial court's award of double damages if we hold that the RLTA applies. As Cuzdey acknowledges in his briefing, by arguing that attorney fees were improper under the RLTA, he effectively concedes that double damages were proper under the unlawful detainer statute. Because we reverse the trial court's order granting Landes's attorney fees and costs, we do not address Cuzdey's argument regarding double damages.

Court, the party must request the fees or expenses." We award attorney fees to the prevailing party "'only on the basis of a private agreement, a statute, or a recognized ground of equity.'" *Tedford*, 13 Wn. App. 2d at 17 (quoting *Equitable Life Leasing Corp.*, 52 Wn. App. at 506).

Under the RLTA, the trial court may award costs and attorney fees "to a landlord who obtains a writ of restitution against a holdover tenant." *Fed. Nat'l Mortg. Ass'n*, 181 Wn.2d at 755; RCW 59.18.290(2). Because the RLTA does not apply to this case, we decline to award Landes costs or attorney fees.

### CONCLUSION

Accordingly, we affirm the writ of restitution, reverse the trial court's order granting Landes's attorney fees and costs, and remand for the trial court to vacate the order awarding attorney fees and costs. We deny Landes's request for attorney fees and costs on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Glasgow, C.J.

Che, J.